ROCKY HILL TEACHERS' ASSOCIATION *v.* BOARD OF EDUCATION OF THE TOWN OF ROCKY HILL (AC 22401)

Spear, Mihalakos and Bishop, Js.[1]

Submitted on briefs April 26—officially released September 10, 2002

---

[1] This appeal was argued before a panel comprised of Judges Spear, Mihalakos and Bishop. Although Judge Spear agreed with the other judges regarding the resolution of this appeal, he died before he had the opportunity to concur with the written decision. The parties stipulated, however that they would not reargue the appeal to this court with a panel consisting of the original two judges and an additional judge. Rather, the parties stipulated that they would permit the remaining two judges alone to render a written decision.

*Ronald Cordilico* filed a brief for the appellant (plaintiff).

*Mark J. Sommaruga* and *Robert J. Murphy* filed a brief for the appellee (defendant).

*Opinion*

BISHOP, J. The sole issue to be determined in this appeal is the degree of specificity required for an arbitrator's award to be mutual, final and definite pursuant to General Statutes § 52-418 (a) (4).[2] The appeal arises from the trial court's judgment denying the application of the plaintiff, the Rocky Hill Teachers' Association, to vacate an arbitration award and granting the motion of the defendant, the board of education of the town of Rocky Hill, to confirm the arbitration award. The plaintiff claims that the court improperly failed to vacate the award because the award was not mutual, final and definite. We agree and reverse the judgment of the trial court.

[2] General Statutes § 52-418 (a) provides in relevant part: "Upon the application of any party to an arbitration, the superior court for the judicial district in which one of the parties resides or . . . when the court is not in session, any judge thereof, shall make an order vacating the award if it finds any of the following defects: (1) If the award has been procured by corruption, fraud or undue means; (2) if there has been evident partiality or corruption on the part of any arbitrator; (3) if the arbitrators have been guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown or in refusing to hear evidence pertinent and material to the controversy or of any other action by which the rights of any party have been prejudiced; or (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made."

The following facts are not in dispute. The plaintiff is the bargaining agent for teachers employed by the defendant. Pursuant to a collective bargaining agreement (agreement) that runs from July 1, 2000, through June 30, 2003, the parties agreed to submit grievances to arbitration as part of their dispute resolution process. When the present dispute arose, they decided by mutual accord to forgo the preliminary stages of dispute resolution and to submit the matter directly to arbitration.

The dispute concerned the assessment of teacher contributions for health care premiums, in particular, whether the costs of dental premiums were to be included in the calculation of the teachers' share of the overall health care premiums. The agreement made some mention of the dental premiums,[3] but omitted any explicit reference to dental costs when it detailed the calculation of the teachers' contribution amounts.[4] In the subsequent arbitration, the parties stipulated that neither side had ready proposals for dental coverage during the agreement negotiations.[5] Nevertheless, when the premiums later were assessed against the teachers, they included the costs of dental care, which gave rise to plaintiff's grievance.

[3] Article XXXI, § A, of the agreement states in relevant part: "The Board shall provide, at its expense (subject to the payroll deduction set forth in Section F and the terms of Section H), for each teacher and the families of such teachers, the option of one of the insurance plans set forth in Appendix VI."

Article XXXI, § B, of the agreement states in relevant part that "the Board shall provide at its expense (subject to payroll deduction set forth in Section F) for each teacher and the families of such teachers: CIGNA Dental Plan Classes I, II and III. In Classes II and III there is an annual deductible of $50 per individual/$150.00 per family."

[4] Article XXXI, § F, of the agreement lists the respective contribution amounts for various benefits including indemnity, PPO, POS, HMO plans. No mention is made of dental plans.

[5] The arbitrator determined that dental costs had not been discussed by the parties as part of the formula for determining teacher contributions to medical premiums.

The parties presented the following questions to the arbitrator for resolution: "Did the Board violate the contract [agreement] when it included the dental premium costs in its calculation of premium cost share dollar amounts as provided for in Article XXXI, Section F [of the agreement]? II. If so, what shall the remedy be?"

In his July 6, 2001 decision, the arbitrator determined that the defendant had violated the agreement by including dental premium costs in the calculation of premium share dollar amounts. As a remedy, the arbitrator ordered the parties "to negotiate the issue of whether to include the dental costs within the formula to determine teacher contributions toward medical/health premiums. In the event that said negotiations do not result in an agreement between the parties within thirty (30) days, I order the parties to submit this issue to binding arbitration under the Teacher Negotiation Act [General Statutes § 10-153a et seq.] . . . I further order that the current contributions of the teachers toward the dental insurance premiums shall remain until a final resolution of this matter, either through negotiations or binding arbitration."

On July 24, 2001, the plaintiff filed an application in the Superior Court to vacate the award on the ground that it was not mutual, final and definite as required by § 52-418 (a) (4). On September 5, 2001, the defendant filed an answer and a motion to confirm the award.

On October 2, 2001, after a hearing, the court issued an oral decision denying the plaintiff's application to vacate the arbitrator's award and granting the defendant's motion to confirm the award. On October 16, 2001, the court issued a memorandum of decision further explaining its ruling.

The issue on appeal is the whether the arbitration award failed to comport with § 52-418 (a) (4) to the

extent that it was not mutual, final and definite. Having given due consideration to the autonomy of arbitrators to make their awards, we reverse the trial court's decision to confirm, and not vacate, the arbitration award.

"[T]he law in this state takes a strongly affirmative view of consensual arbitration." *Board of Education* v. *East Haven Education Assn.*, 66 Conn. App. 202, 207, 784 A.2d 958 (2001). Arbitration is a favored method to prevent litigation, promote tranquility and expedite the equitable settlement of disputes. Id. "As a consequence of our approval of arbitral proceedings, our courts generally have deferred to the award that the arbitrator found to be appropriate." Id. The scope of review for arbitration awards is exceedingly narrow. *Garrity* v. *McCaskey*, 223 Conn. 1, 8–9, 612 A.2d 742 (1992). Additionally, every reasonable inference is to be made in favor of the arbitral award and of the arbitrator's decisions. *Metropolitan District Commission* v. *AFSCME, Council 4, Local 184*, 237 Conn. 114, 119, 676 A.2d 825 (1996).

Courts allow and encourage broad discretion for arbitrators. Awards resulting from erroneous interpretations of the agreement or the law generally will not be vacated where the submissions are unrestricted. With unrestricted submissions,[6] as here, arbitrators are not required to resolve the issues presented according to the law, and courts may not review the evidence that the arbitrators used as the basis for their awards. *Trumbull* v. *Trumbull Police Local 1745*, 1 Conn. App. 207, 212–13, 470 A.2d 1219 (1984).

Despite the wide berth given to arbitrators and their powers of dispute resolution, courts recognize three

[6] A submission is restricted if the agreement conferring the arbitrator's authority over the dispute limits the breadth of issues to be resolved, reserves explicit rights or conditions the award on court review. In the absence of any such restraints, it is unrestricted. *Perkins & Mario, P.C.* v. *Annunziata*, 45 Conn. App. 237, 239–40, 694 A.2d 1388 (1997).

grounds for vacating arbitration awards. *Garrity* v. *McCaskey*, supra, 223 Conn. 6. As a routine matter, courts review de novo the question of whether any of those exceptions apply to a given award. *Schoonmaker* v. *Cummings & Lockwood of Connecticut, P.C.*, 252 Conn. 416, 431, 747 A.2d 1017 (2000). The first ground for vacating an award is when the arbitrator has ruled on the constitutionality of a statute. *Garrity* v. *McCaskey*, supra, 6; *Caldor, Inc.* v. *Thornton*, 191 Conn. 336, 344, 464 A.2d 785 (1983), aff'd, 472 U.S. 703, 105 S. Ct. 2914, 86 L. Ed. 2d 557 (1985). The second acknowledged ground is when the award violates clear public policy. *Garrity* v. *McCaskey*, supra, 6. Those grounds for vacatur are denominated as common-law grounds and are deemed to be independent sources of the power of judicial review. Id. Both are inapplicable here.

The third recognized ground for vacating an arbitration award is that the award contravenes one or more of the statutory proscriptions of § 52-418. Id. "[T]he parameters of judicial review accorded arbitration decisions are encompassed within General Statutes § 52-418 . . . ." (Internal quotation marks omitted.) *Trumbull* v. *Trumbull Police Local 1745*, supra, 1 Conn. App. 215. While generally counseling deference to arbitration, the legislature explicitly has recognized a limited number of checks on the validity of arbitration awards. See footnote 2. Most of those checks are aimed at restricting the excessive use of the arbitrator's powers,[7] but the legislature also requires that the arbitrator *use* the powers granted to achieve a preeminent goal of arbitration: The expeditious and efficient settlement of the dispute.[8]

---

[7] Excessive uses include the arbitrator's egregious misperformance of duty, manifest disregard for the law or patently irrational application of legal principles. See *Garrity* v. *McCaskey*, supra, 223 Conn. 7–10.

[8] "Early in our judicial history we expressed the view that, since arbitration is designed to prevent litigation, it commands much favor from the law . . . . Especially is it to be encouraged as a means of promoting tranquility and the prompt and equitable settlement of disputes in the field of labor relations." (Citations omitted.) *Local 63, Textile Workers Union* v. *Cheney*

It is to that end that the language "imperfectly executed" in § 52-418 (a) (4) is directed. "Despite the general rule counseling deference to arbitral awards, § 52-418 (a) lists circumstances under which vacatur of an award is required. One such circumstance is an award that is not 'mutual, final or definite.' " *Board of Education* v. *East Haven Education Assn.*, supra, 66 Conn. App. 208.

In assessing whether an arbitrator has exceeded his or her powers, the basic test has become the comparison of the award with the submission to determine whether the award conforms to the submission. *Malecki* v. *Burnham*, 181 Conn. 211, 213, 435 A.2d 13 (1980); *Board of Education* v. *Waterbury Teachers' Assn.*, 174 Conn. 123, 127, 384 A.2d 350 (1977). Conformity with § 52-418 also requires that the award meet the minimum requirements of being mutual, final and definite. "[A]n award must be final as to the matters submitted so that the rights and obligations of the parties may be definitely fixed." *Local 63 Textile Workers Union* v. *Cheney Bros.*, 141 Conn. 606, 617, 109 A.2d 240 (1954), cert. denied, 348 U.S. 959, 75 S. Ct. 449, 99 L. Ed. 748 (1955).

In *State* v. *AFSCME, Council 4, Local 1565*, 49 Conn. App. 33, 713 A.2d 869 (1998), aff'd, 249 Conn. 474, 732 A.2d 762 (1999), which we find controlling in this case, this court upheld the trial court's judgment vacating an arbitrator's award on the ground that the award was not mutual, final and definite. Id., 37. The aggrieved party was a correction officer who had been, as the arbitrator determined, wrongly dismissed from her job. Id., 34–35. The remedy was reinstatement, but there was ambiguity as to where she would be reemployed. Id., 35. The award ordered the grievant to be placed at *either* the Niantic correctional facility *or* at an alternate

---

*Bros.*, 141 Conn. 606, 612–13, 109 A.2d 240 (1954), cert. denied, 348 U.S. 959, 75 S. Ct. 449, 99 L. Ed. 748 (1955).

facility that would be agreeable to all parties. Id. Thus, further negotiation was required on that point. Because the award did not specify an exact location for placement, this court determined that the award was, in the language of § 52-418, indefinite. Id., 37. The award could not be said to fix definitively the rights and obligations of the parties. This court found evidence for the lack of definitiveness in the arbitrator's decision to retain jurisdiction over the case for an additional sixty days to resolve any outstanding issues. Id.

In the present case, the defendant seeks to distinguish *AFSCME, Council 4, Local 1565*, on the ground that the arbitrator in that case had retained jurisdiction, whereas the arbitrator here has selected a second method of arbitration, that of the Teacher Negotiation Act, should the prescribed negotiations fail. The defendant proposed, and the court agreed, that this act of handing off jurisdiction represents the sort of closure intended to satisfy the "mutual, final and definite" clause of § 52-418 (a) (4). We are not persuaded.

In *AFSCME, Council 4, Local 1565*, we held that "[b]ecause the remedy remained open to negotiation at the time the award was rendered, and because the award left a specific remedy to the predilection of one of the parties, it was not definite and the trial court properly vacated the award." Id. Here, the award similarly is open to negotiation. That a failed negotiation might return to a different arbitrator, instead of the original, does not mitigate the indefiniteness, or the lack of finality, of the award.

The judgment is reversed and the case is remanded with direction to grant the plaintiff's application to vacate the award and to remand the matter to the arbitrator for further proceedings in accordance with law.

In this opinion the other judges concurred.