# INTERNATIONAL BROTHERHOOD OF POLICE OFFICERS, LOCAL 361 *v.* TOWN OF NEW MILFORD
## (AC 23778)

Dranginis, DiPentima and Hennessy, Js.

Argued December 2, 2003—officially released March 2, 2004

*John M. Walsh, Jr.*, for the appellant (plaintiff).

*Michael R. Brandt*, with whom, on the brief, was *David A. Ryan, Jr.*, for the appellee (defendant).

*Opinion*

DiPENTIMA, J. The plaintiff, International Brotherhood of Police Officers, Local 361, appeals from the judgment of the trial court denying its application to vacate an arbitration award. The plaintiff claims that the court improperly concluded that (1) the award of the arbitration panel was final and definite with regard to the rights of the parties, (2) the award of the arbitration panel did not violate the public policy prohibiting discrimination based on mental disability and (3) the request of the defendant town of New Milford for the disclosure of all medical records regarding the diagnosis and treatment of its employee did not violate public policy regarding invasion of privacy. We affirm the judgment of the trial court.

The pertinent facts and procedural history are as follows. The plaintiff entered into a labor agreement with the defendant for the terms and conditions of police services between July 1, 1995, and June 30, 1997. The bargaining agreement between the parties included a procedure for resolution of disputes through arbitration. On May 21, 1987, the New Milford police department hired Gilmer Thibeault as a patrol officer, and he was a member of the plaintiff union throughout his employment. In February and March, 1997, Thibeault became depressed and was unable to function in his

job. From approximately March 4 to May 8, 1997, he was treated at Charlotte Hungerford Hospital in Torrington for depression and anger problems. Throughout that time, he was on paid sick leave. On May 6, 1997, the defendant notified Thibeault that he was being relieved of his duties as a police officer and that he would remain on paid medical leave until sometime in June, 1997, when he would be required to undergo a fitness for duty evaluation before returning to active duty.

On June 10, 1997, Thibeault presented himself for work with a certificate from his physician stating that he had been treated for depression and that he was able to return to work. The defendant sent him home. The defendant then notified Thibeault's attorney that it was necessary for Thibeault to provide medical records to the defendant's physician stating the diagnosis and treatment, and to make an appointment for an examination in accordance with the May 6, 1997 notification. Thibeault failed to provide the records or to submit to the required examination.

On June 23, 1997, the defendant placed Thibeault on an unpaid leave of absence. On June 28, 1997, the plaintiff filed a grievance contesting the defendant's decision on the ground that the defendant did not have just cause to suspend Thibeault without pay indefinitely, in violation of the collective bargaining agreement. The grievance was denied at each step in the grievance procedure. The case was then submitted to the state board of mediation and arbitration (panel). The following question was submitted to the panel: "Did the [defendant] have just cause to indefinitely suspend the grievant under the [collective bargaining agreement]? If not, what shall the remedy be?" On February 20, 2001, the arbitration panel issued a written award denying the grievance on the ground that the defendant had just cause to suspend Thibeault indefinitely. The plaintiff

then filed an application in the Superior Court to vacate the arbitration award. After the court rendered judgment denying the plaintiff's application, this appeal followed.

Before reaching the claims on appeal, we acknowledge that the policy behind arbitration compels a deferential standard of review of arbitration awards. "[T]he law in this state takes a strongly affirmative view of consensual arbitration. . . . Arbitration is a favored method to prevent litigation, promote tranquility and expedite the equitable settlement of disputes. . . . As a consequence of our approval of arbitral proceedings, our courts generally have deferred to the award that the arbitrator found to be appropriate. . . . The scope of review for arbitration awards is exceedingly narrow. . . . Additionally, every reasonable inference is to be made in favor of the arbitral award and of the arbitrator's decisions. . . .

"Courts allow and encourage broad discretion for arbitrators. Awards resulting from erroneous interpretations of the agreement or the law generally will not be vacated where the submissions are unrestricted. With unrestricted submissions, as here, arbitrators are not required to resolve the issues presented according to the law, and courts may not review the evidence that the arbitrators used as the basis for their awards. . . .

"Despite the wide berth given to arbitrators and their powers of dispute resolution, courts recognize three grounds for vacating arbitration awards. . . . As a routine matter, courts review de novo the question of whether any of those exceptions apply to a given award. . . . The first ground for vacating an award is when the arbitrator has ruled on the constitutionality of a statute. . . . The second acknowledged ground is when the award violates clear public policy. . . . Those grounds for vacatur are denominated as com-

mon-law grounds and are deemed to be independent sources of the power of judicial review. . . .

"The third recognized ground for vacating an arbitration award is that the award contravenes one or more of the statutory proscriptions of [General Statutes] § 52-418." (Citations omitted; internal quotation marks omitted.) *Rocky Hill Teachers' Assn.* v. *Board of Education*, 72 Conn. App. 274, 278–79, 804 A.2d 999, cert. denied, 262 Conn. 907, 810 A.2d 272 (2002).

I

The plaintiff first claims that the court improperly concluded that the award of the arbitration panel was final and definite with regard to the rights of the parties. Specifically, the plaintiff argues that the arbitration award failed to address Thibeault's employment status with the police department and was therefore open-ended, creating the possibility of further litigation in contravention of § 52-418 (a) (4).[1] Because the submission was unrestricted and the issue submitted by the plaintiff was the same limited issue framed and answered by the panel, we disagree.

"In assessing whether an arbitrator has exceeded his or her powers, the basic test has become the comparison of the award with the submission to determine whether the award conforms to the submission. . . . Conformity with § 52-418 also requires that the award meet the minimum requirements of being mutual, final and definite. [A]n award must be final *as to the matters submitted* so that the rights and obligations of the par-

---

[1] General Statutes § 52-418 (a) provides in relevant part: "Upon the application of any party to an arbitration, the superior court . . . shall make an order vacating the award if it finds any of the following defects . . . (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made."

ties may be definitely fixed." (Citations omitted; emphasis added; internal quotation marks omitted.) Id., 280.

Further, if the submission is unrestricted, the court's review is significantly limited. "Under an unrestricted submission, the arbitrators' decision is considered final and binding; thus the courts will not review the evidence considered by the arbitrators nor will they review the award for errors of law or fact. . . . The resulting award can be reviewed, however, to determine if the award conforms to the submission. . . . Such a limited scope of judicial review is warranted given the fact that the parties voluntarily bargained for the decision of the arbitrator and, as such, the parties are presumed to have assumed the risks of and waived objections to that decision. . . . It is clear that a party cannot object to an award which accomplishes precisely what the arbitrators were authorized to do merely because that party dislikes the results. . . . The significance, therefore, of a determination that an arbitration submission was unrestricted or restricted is not to determine what the arbitrators are obligated to do, but to determine the scope of judicial review of what they have done. Put another way, the submission tells the arbitrators what they are obligated to decide. The determination by a court of whether the submission was restricted or unrestricted tells the court what its scope of review is regarding the arbitrators' decision." (Citations omitted; internal quotation marks omitted.) *Industrial Risk Insurers* v. *Hartford Steam Boiler Inspection & Ins. Co.*, 258 Conn. 101, 110, 779 A.2d 737 (2001).

In the present case, the plaintiff concedes that the submission was unrestricted and that the arbitration award conformed to the submission. The only remaining question, therefore, is whether the award is final as to the matters submitted. The issue submitted to the panel was: "Did the [defendant] have just cause to indefinitely suspend the grievant under the [collective

bargaining agreement]? If not, what shall the remedy be?" The panel concluded that the defendant had demonstrated just cause. The plaintiff argues, however, that the court improperly concluded that the panel would have exceeded its authority if it had addressed the length of suspension, the termination date of the suspension and the status of Thibeault's employment. We disagree.

The plaintiff relies on *State* v. *AFSCME, Council 4, Local 1565*, 49 Conn. App. 33, 713 A.2d 869 (1998), aff'd, 249 Conn. 474, 732 A.2d 762 (1999), for the proposition that in a case in which an arbitration award fails to state the exact location of the reinstatement of an employee, the remedy is open to negotiation and the award is not definite. The court held, however, that "this portion of the award did not conform to the submission, which required that the arbitrator provide a specific remedy upon a finding that the grievant was terminated without just cause." Id., 37. Such is not the case here, where it is conceded that the award conformed to the submission. The plaintiff also relies on *Rocky Hill Teacher's Assn.* v. *Board of Education*, supra, 72 Conn. App. 274, in which the arbitrator answered in the affirmative the question submitted: "Did the Board violate the contract [agreement] when it included the dental premium costs in its calculation of premium cost share dollar amounts as provided for in [the agreement]." (Internal quotation marks omitted.) Id., 277. The arbitrator ordered the parties "to negotiate the issue of whether to include the dental costs within the formula to determine teacher contributions toward medical/ health premiums"; id.; and this court determined that such an award that was open to further negotiation was not mutual, final and definite, as is required by § 52-418. Id., 281. The court cited *AFSCME, Council 4, Local 1565*, which held that "[b]ecause the *remedy* remained open to negotiation at the time the award was rendered,

and because the award left a specific *remedy* to the predilection of one of the parties, it was not definite and the trial court properly vacated the award." (Emphasis added; internal quotation marks omitted.) Id. Here, the court simply affirmed the panel's determination that the defendant had just cause to suspend the grievant indefinitely under the collective bargaining agreement. The award is thus final as to the matter submitted.

As previously stated, with an unrestricted submission, the court's review of the award is limited to a determination of whether it conforms to the submission. We agree with the court's determination that the award conformed to the submission. Accordingly, the plaintiff's claim fails.

## II

The plaintiff next claims that the court improperly concluded that the award of the arbitration panel did not violate the public policy prohibiting discrimination on the basis of mental disability. We disagree.

"The proper standard of review for examining whether an arbitral decision violates a clear public policy was recently articulated in *Schoonmaker* v. *Cummings & Lockwood of Connecticut, P.C.*, 252 Conn. 416, 429, 747 A.2d 1017 (2000), in which our Supreme Court stated: Where there is no clearly established public policy against which to measure the propriety of the arbitrator's award, there is no public policy ground for vacatur. If, on the other hand, it has been determined that an arbitral award does implicate a clearly established public policy, the ultimate question remains as to whether the award itself comports with that policy. We conclude that where a party challenges a consensual arbitral award on the ground that it violates public policy, and where that challenge has a legitimate, colorable basis, de novo review of the award is appropriate in order to determine whether the award does in fact

violate public policy." (Internal quotation marks omitted.) *State* v. *AFSCME, Council 4, Local 2663, AFL-CIO*, 59 Conn. App. 793, 796–97, 758 A.2d 387, cert. denied, 255 Conn. 905, 762 A.2d 910 (2000).

"We interpret *Schoonmaker* to require a two-step analysis in cases such as this one in which a party raises the issue of a violation of public policy in a arbitral award. First, we must determine whether a clear public policy can be identified. Second, if a clear public policy can be identified, we must then address the ultimate question of whether the award itself conforms with that policy." Id., 797.

The plaintiff argues that the court improperly concluded that the award of the arbitration panel did not contravene the Connecticut Fair Employment Practices Act, General Statutes § 46a-51 et seq., and the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq., which prohibit discrimination based on mental disability. Specifically, the plaintiff argues that the decision of the arbitration panel was biased.

At the outset, we must determine whether a clear public policy is at issue in this case. "A public policy challenge to an arbitration award is rooted in the principle that the parties cannot expect conduct which is illegal or contrary to public policy to receive judicial endorsement any more than parties can expect a court to enforce such a contract between them. . . . Accordingly, the public policy exception to arbitral authority should be narrowly construed and [a] court's refusal to enforce an arbitrator's interpretation of [collective bargaining agreements] is limited to situations where the contract as interpreted would violate some explicit public policy that is well defined and dominant, and is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests." (Citation omitted; internal quo-

tation marks omitted.) *State* v. *AFSCME, Council 4, Local 2663, AFL-CIO,* supra, 59 Conn. App. 797–98.

It is axiomatic that Connecticut adheres to a public policy prohibiting discrimination on the basis of disabilities. Such a policy is embodied in General Statutes § 46a-60 (a) (1), which prohibits discrimination "because of [an] individual's . . . present or past history of mental disability . . . or physical disability . . . ." See also 42 U.S.C. §§ 12101 through 12117.

In light of that clear public policy, we turn to the question of whether the arbitration award comports with that policy. Taking into consideration the narrow scope of the public policy limitation of arbitral authority, the plaintiff had the burden of clearly demonstrating illegality or conflict with this established public policy. See *New Haven* v. *AFSCME, Council 15, Local 530,* 208 Conn. 411, 417, 544 A.2d 186 (1988).

The arbitration panel concluded that "to return the grievant to work when the grievant's own doctors caution that the grievant would require close supervision and future treatment as a condition to his return to work does not give the grievant a clear and convincing return to work pass." The plaintiff argues that the arbitration panel's statement in its award reflected bias in that it is illustrative of the stereotypic assumptions encountered by those who suffer from mental illness. That argument misstates the findings of the arbitration panel and the court.

In a letter to the grievant dated May 6, 1997, the chief of police stated that prior to returning to duty, Thibeault "would be required to undergo an evaluation concerning his fitness for duty," an evaluation that the defendant had the right to request under relevant provisions of the parties' collective bargaining agreement.[2]

---

[2] Section 5.01 of the management rights provision of the collective bargaining agreement provides that the defendant has the right to prescribe rules regarding the maintenance of discipline and efficiency of its employees.

Several physicians who had treated Thibeault expressed concern that his depression would require continued supervision and treatment. The panel properly determined that the defendant had the express and implied authority to require a medical evaluation or a medical record to determine Thibeault's fitness to return to work. The arbitration panel therefore did not justify Thibeault's indefinite suspension on the basis of the requirement of further treatment. Rather, Thibeault was indefinitely suspended until he submitted to a fitness for duty examination or permitted the defendant's physician to review relevant medical records. The plaintiff has failed to meet its burden of demonstrating bias on the part of the arbitration panel or discrimination on the part of the defendant. Thus, there is no basis for a finding of a violation of the public policy prohibiting discrimination based on mental disability. We conclude that the award was not improper.[3]

### III

The plaintiff's final claim is that the court improperly concluded that the defendant's request for the disclosure of all of Thibeault's medical records regarding his diagnosis and treatment for depression did not violate the public policy against unnecessary invasions of privacy. Because the plaintiff has not demonstrated a clear public policy against which to measure the propriety of the arbitrator's award, we disagree. See *Schoonmaker* v. *Cummings & Lockwood of Connecticut, P.C.*, supra, 252 Conn. 429.

---

Moreover, § 2.1.8 of the standard of conduct in the collective bargaining agreement provides that "all sworn members of the department shall . . . submit to a physical and/or psychological exam at any time, at the expense of the Department, when so ordered by the Chief of Police." We note that those provisions reflect the competing public policy of ensuring the fitness and emotional stability of armed peace officers.

[3] In light of our resolution of that claim, we reject the alternate grounds to affirm raised by the defendant that the court improperly accorded the claim de novo review.

As previously discussed, our scope of review, as set forth in *Schoonmaker*, is de novo. Id. The plaintiff argues that the scope of the defendant's request for disclosure of Thibeault's medical records was unreasonable and overbroad.[4] At the outset, we examine whether there is a clear public policy that restricts the disclosure of medical records to an employer. See id.

The plaintiff relies on General Statutes (Rev. to 1997) § 1-19 (b), now § 1-210 (b), regarding the public disclosure of medical records. Section 1-19 (b), now § 1-210 (b), provides in relevant part: "Nothing in [the Freedom of Information Act] shall be construed to require disclosure of . . . (2) personnel or medical files and similar files the disclosure of which would constitute an invasion of privacy . . . ." Although that statute establishes a clear public policy favoring the privacy rights of public employees regarding the *public* disclosure of medical records, we agree with the court that "the [plaintiff] has failed in its burden of proving that there is an explicit public policy that is well defined and dominant in favor of shielding from an employer medical records of treatment for a condition which has disabled an employee for several weeks." We therefore do not exercise de novo review of whether the award violated Thibeault's privacy rights. Under the deferential scope

---

[4] The court stated that "the [plaintiff] never made a public policy argument to the panel that the request for records violated Thibeault's privacy rights." A review of the record shows that the argument, though sparse, was indeed raised by the plaintiff. The grievant testified before the panel that he "was willing to relinquish whatever medical records were required for this illness," but that he objected to providing a copy of his entire medical history because "other records within my medical history were private issues between my physician and I." Moreover, in a posthearing brief, the plaintiff argued that "[t]he [defendant] had failed to look into Officer Thibeault's concerns regarding a wholesale disclosure of medical records to determine if a modification of the request was appropriate." The plaintiff thus presented the question of whether the [defendant] had just cause to "refuse . . . to acknowledge Officer Thibeault's request for a more limited release of medical records so as to avoid disclosure of private information."

of review this court must apply, we find that the trial court properly rejected that claim.

The judgment is affirmed.

In this opinion the other judges concurred.