******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# GABRIELLE DITULLIO *v.* LM GENERAL INSURANCE COMPANY
## (AC 44114)

Alvord, Suarez and Clark, Js.

*Syllabus*

The plaintiff sought to confirm an arbitration award against the defendant arising out of a separate action in which she sought to recover damages from the insurer L for underinsured motorist benefits. The plaintiff previously had received a $20,000 settlement from a tortfeasor in connection with injuries she sustained in a motor vehicle collision. In bringing the underinsured motorist action against L, the plaintiff alleged that the $20,000 settlement was insufficient to fully compensate her and that L was legally responsible for damages in excess of the underinsured motorist's coverage. The plaintiff, the defendant and L ultimately agreed to settle the case by means of binding arbitration and entered into a written arbitration agreement. Thereafter, an arbitrator issued an award in the amount of $33,807.50. The arbitrator made no findings regarding collateral sources, which were to be deducted from the total damages pursuant to the parties' arbitration agreement. The parties subsequently agreed with each other as to the amounts of collateral sources, but disagreed as to whether the $20,000 settlement should be deducted from the award. The defendant filed an objection to the plaintiff's application to confirm the award, in which it argued, inter alia, that it was legally responsible only for damages exceeding the $20,000 settlement that the plaintiff already had received from the tortfeasor. The defendant did not otherwise file a motion to modify or to correct the award. Thereafter, upon the parties' request, the arbitrator issued an articulation stating that the award of $33,807.50 was a full value award, which did not take into account any collateral sources or offsets, or the $20,000 settlement. Subsequently, the trial court rendered judgment confirming the award with deductions of $1020.02 in collateral sources and $20,000 to offset the prior settlement, from which the plaintiff appealed to this court. *Held*:

1. The trial court properly deducted $20,000 from the arbitration award to offset the settlement that the plaintiff had received from the tortfeasor: although the plaintiff claimed that the court lacked statutory and common-law authority to modify the award, this court concluded that the trial court did not modify the award but, instead, merely conformed the award to the parties' arbitration agreement; moreover, in light of the agreement's reference to the plaintiff's underinsured motorist lawsuit and the nature of her underlying claim, the only reasonable interpretation of the agreement was that the parties initially contemplated and agreed that the arbitrator's gross award would be the sum of the plaintiff's total economic and noneconomic damages, less the $20,000 she had received from the tortfeasor; furthermore, although the arbitration agreement provided that the arbitrator would calculate the gross award and then deduct damages determined to be collateral sources, the arbitrator made clear in his decision and in his articulation that his award was for the full value of the plaintiff's damages, without considering the issues of collateral sources or offsets, demonstrating that the parties subsequently modified their written agreement and submitted to the arbitrator only the question of the plaintiff's total economic and noneconomic damages and preserving the written agreement's provisions limiting the defendant's liability only to those damages in excess of the $20,000 settlement and any collateral sources.

2. This court concluded that, although the trial court properly deducted the $20,000 settlement from the arbitration award, it miscalculated the amount of the judgment: subtracting the collateral sources and the settlement from the arbitrator's full value award yielded the sum of $12,787.48, not the amount of $12,500 that the trial court had calculated.

Argued May 11, 2021—officially released February 1, 2022

*Procedural History*

Application to confirm an arbitration award, brought to the Superior Court in the judicial district of Danbury, and tried to the court, *Brazzel-Massaro, J.*; judgment confirming and clarifying the award, from which the plaintiff appealed to this court. *Affirmed in part; reversed in part; judgment directed.*

*James M. Harrington*, with whom, on the brief, was *Joseph T. Coppola II*, for the appellant (plaintiff).

*Matthias J. DeAngelo*, with whom, on the brief, was *Evan Tegtmeier*, for the appellee (defendant).

*Opinion*

CLARK, J. This appeal concerns an arbitration award (award) that arose out of an underinsured motorist cause of action. The plaintiff, Gabrielle DiTullio, appeals from the judgment of the trial court "confirming the arbitration award with a deduction for the $20,000 offset to clarify the amount to be awarded is $12,500 *in accordance with the law*." (Emphasis added.) On appeal, the plaintiff claims that the court improperly deducted $20,000 from the award because the court (1) lacked statutory authority to do so, as the defendant, LM General Insurance Company, failed to file a motion to modify, correct, or vacate the award pursuant to General Statutes § 52-407tt, § 52-407xx, or § 52-407ww, and also (2) lacked common-law authority to do so.[1] We conclude that the deduction was proper, but on different grounds than those relied upon by the court.[2] The court had authority to deduct the $20,000 settlement from the tortfeasor from the full value arbitration award to conform the award to the parties' written agreement. The court, however, miscalculated the amount of the judgment, and thus, we affirm in part and reverse in part the judgment of the trial court.

The record reveals the following undisputed facts. The plaintiff was injured on March 30, 2015, when her motor vehicle was struck in Bethel by a vehicle operated by Tracie Fabri-Lino (tortfeasor). At the time of the collision, the plaintiff's vehicle was insured by Liberty Mutual Insurance Company (Liberty Mutual).[3] The plaintiff settled her claims against the tortfeasor for $20,000. Thereafter, in January, 2018, the plaintiff commenced an underinsured motorist action (UIM case) against Liberty Mutual,[4] alleging that she had sustained injuries, damages, and other losses as a direct result of the tortfeasor's negligence. She also alleged that she had settled her claim against the tortfeasor for $20,000, the limit of the tortfeasor's liability policy. Significantly with respect to the present appeal, the plaintiff alleged that the settlement was "insufficient to fully compensate [her] for her damages and losses. . . . Wherefore [Liberty Mutual] . . . is legally responsible for all damages *in excess* of the underinsured driver's coverage." (Emphasis added.)

A pretrial settlement conference in the UIM case was held in May, 2019, at which time the parties were unable to agree on a sum to resolve the litigation. They agreed, however, to settle the UIM case by means of binding arbitration and that the UIM case would be withdrawn. On May 31, 2019, the plaintiff, Liberty Mutual, and the defendant signed an arbitration agreement (written agreement) that provides in relevant part: "[The parties] have agreed to *arbitrate the UM/UIM Plaintiff's claim* against the [defendant and Liberty Mutual] regarding a motor vehicle accident which occurred on March 30, 2015 . . . . [T]he [p]arties hereby agree to the follow-

ing:

"1. The *issues in the Lawsuit shall be resolved by means of binding arbitration,* and the Lawsuit shall be resolved by way of release and withdrawal of action. . . .

"2. The Arbitrator shall be mutually agreed upon . . . . All issues of *liability, causation, and damages* shall be decided by the Arbitrator.

* * *

"6. Following the arbitration hearing in connection with this matter, the Arbitrator will render a decision containing a 'Gross Award.'

"7. After determining the Gross Award, the Arbitrator is to deduct from total damages, all economic damages determined to be collateral sources.

"8. After the agreed deductions from the Gross Award per Paragraph 7, the resulting sum shall be the 'Net Award.'

"9. The parameters of the arbitration shall be subject to a confidential high/low agreement wherein the Net Award to the Plaintiff, per Paragraph 8, will be no higher than thirty-two thousand five hundred dollars ($32,500) and no lower than two thousand five hundred dollars ($2,500).

"10. In the event that the Net Award is $32,500 or greater, then the sum due . . . shall be $32,500. In the event the Net Award is $2,500 or less, then the Sum Due shall be $2,500.

"11. None of the parties will disclose the high and low figures of this Agreement to the Arbitrator. . . ."[5] (Emphasis added.)

On July 9, 2019, Attorney Christopher P. Kriesen (arbitrator) held an arbitration hearing, and on July 12, 2019, he issued a written decision. In his decision, the arbitrator found that the tortfeasor's negligence proximately caused the plaintiff's injuries. He also found that the plaintiff had received treatment from several medical providers, but was able to complete training at the police academy and become a patrol officer. The arbitrator found that the plaintiff's economic damages were $13,807.50, her noneconomic damages were $20,000, and the award was $33,807.50. The arbitrator further stated that he made "no finding on collateral sources. If the parties are unable to agree on the issue, they may submit the issue to me."[6] Neither the plaintiff nor the defendant and Liberty Mutual filed with the arbitrator a motion to modify or correct the award pursuant to § 52-407tt.[7]

Thereafter, counsel for the plaintiff informed counsel for the defendant and Liberty Mutual that the collateral source payments totaled $1020.02. Counsel subtracted the collateral source amount from the arbitrator's eco-

nomic award, added the remainder to the arbitrator's $20,000 noneconomic award, and stated that the net award was $32,787.48, which should be reduced to $32,500 in accordance with the "high/low" provision set forth in paragraphs 9 and 10 of the written agreement. Counsel for the defendant and Liberty Mutual agreed with respect to the amount of collateral source payments, but countered that the $20,000 settlement that the plaintiff had received from the tortfeasor also had to be subtracted from the award, resulting in a net award of $12,787.48. Counsel for the plaintiff disagreed, contending that the agreement was for "new money" and that the written agreement did not include a provision regarding the $20,000 tortfeasor settlement. Counsel were unable to resolve their disagreement, and on July 19, 2019, the plaintiff moved to restore the UIM case. See footnote 4 of this opinion.

On September 27, 2019, the plaintiff commenced the present proceeding to confirm the award; she also filed a motion to stay the UIM case. In her application to confirm the award, the plaintiff asked the court to "order that the defendant comply with the terms of the arbitration agreement and that the plaintiff be paid $32,500 pursuant to that agreement and the arbitrator's award." In her application, the plaintiff argued that the court must confirm the award unless it finds grounds to vacate, modify, or correct the award as permitted by statute. She also argued that the agreement was clear and unambiguous, made no mention of the $20,000 settlement and provided that only collateral sources, which pursuant to General Statutes § 52-225b[8] do not include amounts received as a settlement, were to be deducted from the gross award.

On October 11, 2019, the defendant filed an objection to the plaintiff's application to confirm the award on the ground that it was frivolous given that there was a prior lawsuit pending before the court. It also argued that the plaintiff was asking the court to confirm "an arbitration award without taking into account the nature of the claim. This claim is, and always was, a contractual claim for underinsured motorist benefits." The defendant argued, as well, that the complaint in the plaintiff's underlying UIM case alleged that the defendant and Liberty Mutual are "legally responsible for *all damages in excess* of the [underinsured] driver's coverage." (Emphasis altered.) The defendant also argued that "it is well established that a plaintiff is not [to] be compensated twice for the same damages." The defendant suggested that the parties return to the arbitrator for clarification of the award, noting that the arbitrator had not made a finding with regard to collateral sources and that the arbitrator had invited the parties to return if they were unable to agree with respect to collateral sources.

The parties returned to the arbitrator on October 30,

2019, and requested that he articulate his July 12, 2019 award. On the same date, the arbitrator issued an articulation, stating that "the award of *$33,807.50 is a 'full value' award*, taking into account only the facts and basis set forth in the decision. . . . The award *does not take into account any collateral sources or offsets. . . . The award does not take into account in any way the $20,000 payment apparently made by the alleged tortfeasor*. This amount was disclosed to the arbitrator in a position statement (which was not evidence) by the plaintiff and in a deposition transcript submitted by the defendant (*but which was not considered since it was irrelevant to the arbitrator's determination of the award and was therefore not deemed a fact by the arbitrator*). . . . *The arbitrator will consider any issues of collateral sources and/or offsets if the parties have agreed, or do agree, to have these issues considered by the arbitrator*." (Emphasis added.)

On March 9, 2020, the parties appeared before the court for a hearing on the plaintiff's application to confirm the award. The court issued a memorandum of decision on May 19, 2020, in which it noted that the plaintiff had moved to confirm the award, and that, under Connecticut law, a court must confirm an award unless a motion to vacate, modify or correct the award is filed and granted in accordance with the statutes governing such motions.[9] The plaintiff argued that because no motion to vacate, modify or correct had been filed, the court's review was limited to determining whether the arbitrator decided only matters the parties submitted to arbitration, as defined by the written agreement. She also argued that the written agreement is clear and unambiguous and only permits deductions for collateral sources, which, according to her, do not include prior settlements.

The court also noted the defendant's objection, in which the defendant argued that the application to confirm was frivolous when filed because the UIM case had been restored to the docket and remained pending at that time. The defendant noted that the plaintiff was asking the court to confirm the award without taking into account the nature of the underlying contractual claim for underinsured motorist benefits or the plaintiff's UIM lawsuit, which were incorporated into the written agreement by reference, and the defendant alleged that it was legally responsible only for damages exceeding the $20,000 settlement that the plaintiff already had received from the tortfeasor.

In addition, during the March 9, 2020 hearing on the plaintiff's application to confirm, "the defendant also alleged that the parties agreed to an offset and stated in front of the arbitrator that he did not need to take that into consideration because the parties had agreed to the offset." The plaintiff denied that there had been any conversation with the arbitrator about an offset

and the court ultimately concluded that it was "not necessary . . . to address any disagreement between the parties about the subject of discussing the offset with the arbitrator, as the arbitrator explained that the award was a full value award, and though he was aware of the offset, he did not consider it because it was irrelevant in determining the award."

Turning to the merits of the plaintiff's application to confirm, the court found that the plaintiff's underlying claim was a contractual one for underinsured motorist benefits. It also found that the written agreement was clear and unambiguous, but that it did not mention offsets for prior settlements. In addition, neither party took issue with the decision rendered by the arbitrator. Instead, they disagreed about whether an offset should be subtracted from the arbitrator's full value award.

Even though the defendant had not filed with the court a motion to vacate, modify, or correct the award pursuant to the statutory provisions authorizing such filings, the court nevertheless considered the defendant's objection and reviewed the law governing underinsured motorist coverage. In considering the plaintiff's application to confirm, the court stated that it was "necessary to also apply to the present case the fundamental principle of the purpose of underinsured motorist insurance recognized by [Connecticut courts], which is to place the insured in the same, but not better, position as the insured would have been if the underinsured tortfeasor had been fully insured, and the requirement regarding automobile liability policies in [General Statutes] § 38a-335 (c) that no one is entitled to receive duplicate payments for the same element of loss," citing *Haynes* v. *Yale-New Haven Hospital*, 243 Conn. 17, 27, 699 A.2d 964 (1997) (public policy established by underinsured motorist statute is that every insured entitled to recover for damages he or she would have been able to recover if underinsured motorist had maintained adequate policy of liability insurance), and *Fahey* v. *Safeco Ins. Co. of America*, 49 Conn. App. 306, 309–10, 714 A.2d 686 (1998) (purpose of underinsured motorist coverage is to protect named insured and additional insured from suffering inadequately compensated injury caused by accident with inadequately insured automobile; in no event shall any person be entitled to duplicate payments for same element of loss).

In ruling on the plaintiff's motion to confirm, the court noted the articulation that the award is a "*full value award* has significance in deciphering the award as no more than $32,500, which would not [have been] so if the court awarded the entire sum in addition to the settlement amount of $20,000." (Emphasis in original.) Therefore, pursuant to General Statutes § 52-407vv, the court confirmed the award, but also ordered that "in confirming the award, the $20,000 offset must be deducted to clarify the amount to be awarded" to the

plaintiff is "$12,500 *in accordance with the law*." (Emphasis added.) The plaintiff appealed.

On appeal, the plaintiff's principal claim is that the court lacked statutory and common-law authority to modify the award. We agree that it would have been improper for the court to modify the arbitrator's award.

It is well settled that courts generally lack the authority to review unrestricted arbitration awards for errors of law, particularly in the absence of a motion to vacate. *Harty* v. *Cantor Fitzgerald & Co.*, 275 Conn. 72, 80, 881 A.2d 139 (2005); id., 81 (motion to vacate should be granted when arbitrator exceeded powers or so imperfectly executed them that mutual, final, definite award not made). "Judicial review of arbitral decisions is narrowly confined." (Internal quotation marks omitted.) *State* v. *New England Health Care Employees Union, District 1199, AFL-CIO*, 265 Conn. 771, 777, 830 A.2d 729 (2003). "[T]he law in this state takes a strongly affirmative view of consensual arbitration. . . . Arbitration is a favored method to prevent litigation, promote tranquility and expedite the equitable settlement of disputes." (Citation omitted; internal quotation marks omitted.) *Rocky Hill Teachers' Assn.* v. *Board of Education*, 72 Conn. App. 274, 278, 804 A.2d 999, cert. denied, 262 Conn. 907, 810 A.2d 272 (2002). "Where the submission does not otherwise state, the arbitrators are empowered to decide factual and legal questions and an award cannot be vacated on the grounds that . . . the interpretation of the agreement by the arbitrators was erroneous. Courts will not review the evidence nor, where the submission is unrestricted, will they review the arbitrators' decision of the legal questions involved. . . . In other words, [u]nder an unrestricted submission, the arbitrators' decision is considered final and binding; thus courts will not review the evidence considered by the arbitrators nor will they review the award *for errors of law* or fact. . . ." (Emphasis added; internal quotation marks omitted.) *Harty* v. *Cantor Fitzgerald & Co.*, supra, 80.[10]

We, however, conclude that the court did not modify the arbitrator's award, but, in confirming the award as it did, merely effectuated the parties' written agreement. As it did at trial, the defendant claims that the trial court's decision to deduct $20,000 from the award was proper because making that deduction conformed the arbitrator's award to the parties' agreement. For the reasons that follow, we agree.

"Arbitration agreements are contracts and their meaning is to be determined . . . under accepted rules of [state] contract law . . . ." (Internal quotation marks omitted.) *Levine* v. *Advest, Inc.*, 244 Conn. 732, 745, 714 A.2d 649 (1998). "When a party asserts a claim that challenges the . . . construction of a contract, we must first ascertain whether the relevant language in the agreement is ambiguous. . . . A contract is ambig-

uous if the intent of the parties is not clear and certain from the language of the contract itself. . . . When the language of a contract is ambiguous, the determination of the parties' intent is a question of fact . . . . If a contract is unambiguous within its four corners, intent of the parties is a question of law requiring plenary review. . . . Where the language of a contract is clear and unambiguous, the contract is to be given effect according to its terms." (Citation omitted; internal quotation marks omitted.) *O'Connor* v. *Waterbury*, 286 Conn. 732, 743–44, 945 A.2d 936 (2008).

The parties' written agreement in this case provides, in relevant part, that "[the plaintiff] and [the defendant and Liberty Mutual] . . . have agreed to arbitrate *the UM/UIM Plaintiff's claim* against the [defendant and Liberty Mutual] regarding a motor vehicle accident . . . . The issues in *the [l]awsuit* shall be resolved by means of binding arbitration . . . ." (Emphasis added.) The circumstances surrounding the making of the written agreement were the parties' inability to settle the UIM case. The parties, therefore, entered into the agreement to resolve the plaintiff's UIM lawsuit. The plaintiff's complaint in that lawsuit specifically alleged that the tortfeasor's $20,000 settlement with the plaintiff was insufficient to fully compensate her for her damages and losses and that Liberty Mutual was legally responsible for all damages *in excess of the tortfeasor's coverage.*

The written agreement further provides that the arbitrator would render a "Gross Award." After determining the "Gross Award," the written agreement stated that the arbitrator would "deduct from total damages, all economic damages determined to be collateral sources." The resulting sum would constitute the "Net Award." The "Sum Due" would be the "Net Award," subject to the agreement's "high/low" provision.[11] In light of the written agreement's reference to the plaintiff's lawsuit and the nature of her underlying claim, the only reasonable interpretation of the agreement is that the parties initially contemplated and agreed that the arbitrator's "Gross Award" would be the sum of the plaintiff's total economic and noneconomic damages, less the $20,000 she had received from the tortfeasor. The "Net Award," in turn, would be that sum less "all economic damages determined to be collateral sources." The arbitrator's decision and articulation make clear, however, that the parties ultimately submitted a different question to him.

In his decision, the arbitrator found that the tortfeasor caused the plaintiff's injuries and that the plaintiff sustained $20,000 in noneconomic damages and $13,807.50 in economic damages. He issued an "Award" in the amount of $33,807.50. He made no mention of a "Gross Award" or "Net Award" and made no findings regarding "collateral sources." Instead, he informed the parties that if they were "unable to agree on the issue,

*they may submit the issue to me.*" (Emphasis added.)

The parties subsequently agreed to return to the arbitrator for a clarification of his award. The arbitrator articulated that the award was a " 'full value' award, taking into account only the facts and basis set forth in the decision." The arbitrator also stated in his articulation that "[t]he award does not take into account any collateral sources or offsets. . . . *The award does not take into account in any way the $20,000 payment apparently made by the alleged tortfeasor. This amount was disclosed to the arbitrator in a position statement (which was not evidence) by the plaintiff and in a deposition transcript submitted by the defendant (but which was not considered since it was irrelevant to the arbitrator's determination of the award and was therefore not deemed a fact by the arbitrator).*" (Emphasis added.) Last, the arbitrator stated that he would "consider any issues of collateral sources and/ or offsets *if the parties have agreed, or do agree, to have these issues considered by the arbitrator.*" (Emphasis added.)

The arbitrator's decision and articulation, therefore, make clear that, although the written agreement between the parties was to have the arbitrator decide "[a]ll issues of liability, causation, and damages" and issue a "Gross Award" that accounted for the plaintiff's $20,000 settlement with the tortfeasor, the parties subsequently agreed to submit to him only the question of the plaintiff's total economic and noneconomic damages as result of the motor vehicle accident. That is precisely the question that the arbitrator answered in his articulation, and, in doing so, he made clear that his award was for the full value of the plaintiff's damages.

There is nothing in the record to support a claim that, when they modified their written agreement about what to submit to the arbitrator, the parties also agreed to alter that agreement to limit the extent of the defendant's liability to the amount it allegedly owed the plaintiff under the underinsured motorist policy. Concluding otherwise would require us to infer that the defendant agreed to change the written agreement in a way that would make it liable to the plaintiff for amounts that the plaintiff had never sought in the underlying lawsuit and was not entitled to under the laws governing underinsured motorist coverage in our state. See General Statutes § 38a-335 (c); see also *Haynes* v. *Yale-New Haven Hospital*, supra, 243 Conn. 27; *Fahey* v. *Safeco Ins. Co. of America*, supra, 49 Conn. App. 309–10. Nothing in the record supports such an inference.

On the basis of our review of the entire record, including the written agreement, the plaintiff's UIM complaint, the arbitrator's decision, the parties' agreement to return to the arbitrator, and the articulation, we conclude that the parties agreed to submit to the arbitrator only the question of the plaintiff's total economic and

noneconomic damages as a result of the underlying automobile collision, but also preserved the written agreement's provisions limiting the defendant's liability to only those damages in excess of the $20,000 settlement and any "collateral sources," up to a maximum of $32,500. For this reason, the court properly confirmed the award, and effectuated the parties' written agreement, by deducting from the arbitrator's "full value" award the plaintiff's $20,000 settlement with the tortfeasor, plus the amounts the parties agreed represent "collateral sources."

There is, however, another issue for us to consider. In its brief, the defendant has identified an error in the court's calculation of the amount of the judgment, i.e., $12,500. We agree with the defendant. The amount due to the plaintiff is the arbitrator's full value award less collateral sources and the $20,000 settlement with the tortfeasor. Subtracting from the arbitrator's gross award of $33,807.50 the undisputed amount of $1020.02 in collateral sources and the $20,000 settlement amount yields the sum of $12,787.48. Therefore, the net award due to the plaintiff is $12,787.48.

The judgment is reversed only as to the amount of the award, and the case is remanded with direction to render judgment in accordance with this opinion; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.

[1] The plaintiff also claims that the court's improper deduction of $20,000 from the award (1) violates the public policy favoring arbitration as an alternative to litigation and (2) permits parties to arbitration agreements to seek judicial intervention when they are dissatisfied with the arbitrator's award, which will have a chilling effect on arbitration. Because we conclude that the court properly confirmed the arbitration award, we need not reach these claims.

[2] The parties entered into the arbitration agreement on May 31, 2019. In the trial court, the parties litigated, and the trial court adjudicated, the issues pursuant to General Statutes § 53-408 et seq. The parties also cited § 53-408 et seq. in their appellate briefs. Pursuant to No. 18-94 of the 2018 Public Acts, the legislature adopted the Revised Uniform Arbitration Act (revised act), General Statutes § 52-407aa et seq. General Statutes § 52-407cc provides in relevant part that "[s]ections 52-407aa to 52-407eee, inclusive, govern an agreement to arbitrate made on or after October 1, 2018 . . . ."

Following oral argument before us, we ordered the parties to file simultaneous supplemental briefs "addressing whether the [revised act] governs the arbitration at issue in this case, and if so, whether that has any effect on the present appeal." In their supplemental briefs, the parties agree that the revised act applies to the present appeal, and they each assert that the revised act does not alter their respective positions regarding the issues on appeal. In this opinion, we refer to statutes in the revised act when relevant.

[3] In the confirmation proceeding and on appeal, the defendant was identified as the insurer of the vehicle.

[4] See *DiTullio* v. *Liberty Mutual Ins. Co.*, Superior Court, judicial district of Danbury, Docket No. CV-18-6024859-S (withdrawn). The plaintiff withdrew the UIM case on May 31, 2019, the date that the parties signed the written agreement. She, however, moved to restore the UIM case on July 19, 2019, following receipt of the arbitrator's decision. On September 26, 2019, the plaintiff filed a motion to stay the restored UIM case pending a resolution of the arbitration. In response to the motion for stay, the trial court issued an order stating in part: "Counsel appeared at short calendar and addressed the issue of whether the arbitrator will rule on the impact if any for the $20,000 payment to the plaintiff as damages for the accident and whether such insurance proceeds were considered by the arbitrator in

entering an award for $32,500." The plaintiff again withdrew the UIM case on October 30, 2019, when the case was called for jury selection.

[5] The agreement referred to the underlying UIM case, but did not otherwise make any express reference to the $20,000 settlement that the plaintiff had received from the tortfeasor.

[6] See paragraphs 7 and 8 of the written agreement previously set forth in this opinion.

[7] General Statutes § 52-407tt provides in relevant part: "(a) On motion to an arbitrator by a party to an arbitration proceeding, the arbitrator may modify or correct an award:

"(1) Upon a ground stated in subdivision (1) or (3) of subsection (a) of section 52-407xx . . . ."

General Statutes § 52-407xx (a) provides in relevant part: "(1) There was an evident mathematical miscalculation or an evident mistake in the description of a person, thing or property referred to in the award . . . (3) The award is imperfect in a matter of form not affecting the merits of the decision on the claims submitted."

[8] General Statutes § 52-225b defines collateral sources for purposes of General Statutes §§ 52-225a through 52-225c, inclusive. It provides in relevant part: " 'Collateral sources' means any payments made to the claimant, or on his behalf, by or pursuant to: (1) Any health or sickness insurance, automobile accident insurance that provides health benefits, and any other similar insurance benefits, except life insurance benefits available to the claimant, whether purchased by him or provided by others; or (2) any contract or agreement of any group, organization, partnership or corporation to provide, pay for or reimburse the costs of hospital, medical, dental or other health care services. 'Collateral sources' do not include amounts received by a claimant as a settlement." General Statutes § 52-225b. As the court noted, however, the written agreement did not define "collateral sources" or make reference to § 52-225b.

[9] General Statutes § 52-407vv provides: "After a party to an arbitration proceeding receives notice of an award, the party may make a motion to the court for an order confirming the award at which time the court shall issue a confirming order unless the award is modified or corrected pursuant to section 52-407tt or 52-407xx or is vacated pursuant to section 52-407ww."

[10] We agree with the parties that the submission in the present case was unrestricted.

[11] The written agreement prohibited the parties from disclosing to the arbitrator the "high/low" provision of the agreement.

---