******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# BENISTAR EMPLOYER SERVICES TRUST COMPANY ET AL. *v.* JAMES J. BENINCASA ET AL.
## (AC 40081)

Lavine, Alvord and Prescott, Js.

*Syllabus*

The plaintiffs sought to vacate an arbitration award in favor of the defendants, who filed a motion to confirm the award, pursuant to which an arbitrator had awarded the defendants monetary damages relating to the purchase of certain life insurance policies by the plaintiffs on behalf of the defendants. The trial court denied the plaintiffs' application to vacate the award, granted the defendants' motion to confirm the award and rendered judgment thereon, from which the plaintiffs appealed to this court. *Held*:

1. The plaintiffs could not prevail on their claim that the award should have been vacated because it was not timely issued, which was based on their claim that the award was not made within thirty days from the close of the hearing as required by statute (§ 52-416 [a]); given that the plaintiffs had informed the arbitrator of their intention to file counterclaims and to initiate a separate arbitration arising out of the same facts and circumstances at issue in the present arbitration, and had asked the arbitrator to keep the matter open after the next week's hearings and to refrain from issuing any award in connection with those hearings, so that they could assert their claims and consolidate the arbitration matters, the trial court properly determined that the arbitrator reasonably awaited the closing of the hearing in expectation of the submission of the additional arbitration, and it was reasonable for the arbitrator to close the hearing on April 18, 2013, as it only then became clear that the two arbitrations could not be consolidated, and closing the hearing after the determination that the cases could not be consolidated was consistent with the public policy that favors arbitration for efficiency and economic reasons, and was a reasonable interpretation of the previously stated intentions of the plaintiffs, who did not object until May 13, 2013, which reasonably led the arbitrator to conclude that he was prolonging the hearings with the consent of the parties.

2. The plaintiffs could not prevail on their claim that because the arbitration award was predicated on a manifest disregard of the law, the trial court improperly denied their application to vacate the award; the plaintiffs' claim that the arbitrator's award was in manifest disregard of the law relied on the argument that the arbitrator ignored contract law in his improper factual determination that elements of a contract existed, it was clear from the award that the arbitrator considered the plaintiffs' argument but disagreed with it, and it was not for this court to review the evidence or otherwise second-guess the arbitrator's factual determination where, as here, the arbitration submission was unrestricted.

3. The plaintiffs' claim that the arbitration award should have been vacated because it was not mutual, final and definite was unavailing: the award definitively set the liability and legal responsibility of the plaintiffs, even though it did not determine a precise amount of damages, which could not be determined by the arbitrator because the damages had yet to be calculated by the Internal Revenue Service (IRS), and given that the parties were well aware of the nature of the involvement of the IRS when they agreed to have the matter resolved through arbitration, to vacate the award when it was as final and definite as existing circumstances permitted would have undermined the strong public policy favoring arbitration as a means of resolving disputes; moreover, the fact that the arbitrator retained jurisdiction to interpret and resolve any disputes arising from the final effectuation of his ruling did not undermine the finality of the award.

4. The trial court properly denied the plaintiffs' application to vacate the arbitration award on public policy grounds; the arbitrator's conclusion that the transfer of the life insurance policies to the defendants created a tax liability that would not have otherwise been imposed but for the

transfer did not violate an explicit, well-defined, and dominant public policy of this state but, rather, was a factual finding that this court could not reverse or second-guess.

Argued December 10, 2018—officially released April 23, 2019

*Procedural History*

Application to vacate an arbitration award, brought to the Superior Court in the judicial district of Hartford, where the defendants filed a motion to confirm the award; thereafter, the matter was tried to the court, *Noble*, *J.*; judgment denying the application to vacate and granting the motion to confirm, from which the plaintiffs appealed to this court. *Affirmed.*

*Daniel J. Krisch*, with whom were *Logan A. Carducci* and, on the brief, *Daniel P. Scapellati*, for the appellants (plaintiffs).

*Mark J. Kallenbach*, pro hac vice, with whom was *Jerome Patger*, for the appellees (defendants).

*Opinion*

LAVINE, J. The plaintiffs, Benistar Employer Services Trust Company (BESTCO) and Benistar Admin Services, Inc. (BASI), appeal from the judgment of the trial court denying their application to vacate and granting a motion to confirm an arbitration award in favor of the defendants, James J. Benincasa and Jody L. Benincasa. On appeal, the plaintiffs claim that the court improperly denied the application to vacate the arbitration award because the award was (1) not timely issued, (2) predicated on a manifest disregard of the law, (3) not mutual, final and definite, and (4) in violation of public policy. We disagree and affirm the judgment of the trial court.

The following undisputed facts, as found by the trial court, and procedural history are relevant to this appeal. "The dispute which brought the parties to arbitration involved the purchase of two $16 million individual whole life insurance policies on the lives of the [defendants], who were the president and vice president, respectively, and sole owners of [Mortgages Unlimited, Inc. (MUI)], an S corporation. The policies were purchased by the Benistar 419 Plan and Trust (plan), a multiple employer welfare benefit plan. The funding for the purchase of the policies came from MUI's participation in, and contributions to, the plan. BESTCO was the plan sponsor, and BASI was the administrator of the plan. The Plan was designed to comply with Internal Revenue Code, 26 U.S.C. § 419A (f) (6). In its conception, the plan was to provide tax deductions to participating employers, such as MUI, for contributions paid by them to the plan's trust fund. The contributions, in turn, funded the premiums for preretirement life insurance policies for key employees under the plan. The Plan issued a certificate of coverage to the employer, MUI, listing the participants as the [defendants], each of whom was to receive $16 million in death benefits. In this case, MUI contributed [$700,000] annually to fund the policies between 2001 and 2004, totaling $2.8 million. The contributions to the plans were, in fact, claimed as tax deductions by MUI.

"In 2004, MUI transferred the benefits and life insurance policies from the plan to the Grist Mill Trust Welfare Benefit Plan out of concern that the plan would no longer support tax free contributions to the life insurance policies. Benistar 419 Plan Services, Inc., was the Grist Mill [Trust Welfare Benefit] Plan's sponsor and administrator. The [defendants], as participants, and MUI, as employer, shortly thereafter, terminated their participation in the Grist Mill Trust [Welfare Benefit Plan], and the [defendants] took possession of the policies in their own names. The [defendants] were charged $33,546.90 for the surrender of the policies.

"The Commissioner of Internal Revenue (commis-

sioner) challenged the validity of the tax deductions and ultimately issued the [defendants] a notice of deficiency on their personal income taxes on the basis that the contributions to the plan were payments on their personal behalf and were not ordinary and necessary business expenses of their employer, MUI, under 26 U.S.C. § 162 (a). The commissioner also asserted that the distribution of the two life insurance policies resulted in taxable income to the [defendants], which they failed to report. In addition, the commissioner imposed underpayment penalties pursuant to 26 U.S.C. § 6662A. . . .

"The [defendants] filed a claim for arbitration against the [plaintiffs][1] on November 29, 2007, asserting, among other theories of liability, breach of contract for their failure to provide a tax exempt vehicle to purchase the life insurance policies. The arbitration was sought in accordance with identical provisions found in the plan Administration Agreement and the Grist Mill Trust Welfare Benefit Plan Administration Fee Agreement, which provided in relevant part: 'Any dispute or controversy arising under or in connection with this Agreement or with respect to the Employer's participation in the Plan shall be settled by Arbitration, conducted by a single arbitrator in New York City in accordance with the rules of the American Arbitration Association [(AAA)] then in effect. . . .' The [defendants] submitted, inter alia, breach of contract and fiduciary duty claims to arbitration.

"Evidence in the arbitration was taken on March 5 and 6, 2013, [before Arbitrator Jeffrey G. Stein]. The arbitrator's award dated May 15, 2013, was transmitted to AAA on May 17, 2013. The award recited a prearbitration request by the [plaintiffs] to add a cross claim in the context of the pending arbitration submittal, which Stein had denied on the basis that the AAA rules required them to file a separate arbitration and then consolidate the cases. Stein declared in the award that '[o]n or about April 18, 2013 . . . the record was closed.' Substantively, Stein made the specific finding that the [plaintiffs] 'breached their promises and obligations to [the defendants] in numerous ways.' Pertinently, this included a breach of the [plaintiffs'] 'contractual fiduciary duties [by] failing to provide a compliant 26 U.S.C. § 419A (f) (6) plan and, most specifically, by not determining the maximum amount of contributions that could be contributed. . . . [The plaintiffs] . . . failed to provide a tax free transfer of the policy out of the plan to the [defendants].' Stein awarded the [defendants] the following damages: (1) taxes, including 26 U.S.C. § 6662A taxes, as of the date of the award attributable to 'the transfer of the [life insurance] polic[ies] as part of the exit strategy from the failed Plan'; (2) 'the $33,546.90 transfer fee' for the surrender of the policies; (3) the attorney's fees for 'the legal defense of the [Internal Revenue Service (IRS)]

assessment' . . . and (4) any state taxes assessed for the transfer of the policies. Because the amount of the federal and state taxes and penalties had not yet been determined, and no findings as to such were made by Stein, he retained jurisdiction to interpret and resolve any disputes concerning the award. The parties moved for clarification of the award. In the clarification, Stein explained that the [defendants] had 'not [yet] settled with the IRS and, therefore, there [could be] no set amount of taxes and penalties that could be awarded.' Stein observed that his award detailed 'each component of the ultimate settlement [the defendants] [would] reach with the IRS and which party is responsible for that component. [Stein] believe[d] that [the award was] specific and clear enough.' " (Footnotes added and omitted.) Additional facts will be set forth as needed.

Before reaching the plaintiffs' claims on appeal, we underscore that the policy behind arbitration compels a deferential standard of review of arbitration awards. "[T]he law in this state takes a strongly affirmative view of consensual arbitration. . . . Arbitration is a favored method to prevent litigation, promote tranquility and expedite the equitable settlement of disputes. . . . As a consequence of our approval of arbitral proceedings, our courts generally have deferred to the award that the arbitrator found to be appropriate. . . . The scope of review for arbitration awards is exceedingly narrow. . . . Additionally, every reasonable inference is to be made in favor of the arbitral award and of the arbitrator's decisions. . . .

"Despite the wide berth given to arbitrators and their powers of dispute resolution, courts recognize three grounds for vacating arbitration awards. . . . As a routine matter, courts review de novo the question of whether any of those exceptions apply to a given award. . . . The first ground for vacating an award is when the arbitrator has ruled on the constitutionality of a statute. . . . The second acknowledged ground is when the award violates clear public policy. . . . Those grounds for vacatur are denominated as common-law grounds and are deemed to be independent sources of the power of judicial review. . . . The third recognized ground for vacating an arbitration award is that the award contravenes one or more of the statutory proscriptions of . . . [General Statutes] § 52-418. . . .

"Where the submission does not otherwise state, the arbitrators are empowered to decide factual and legal questions and an award cannot be vacated on the [ground] that . . . the interpretation of the agreement by the arbitrators was erroneous. Courts will not review the evidence nor, where the submission is unrestricted,[2] will they review the arbitrators' decision of the legal questions involved. . . . In other words, [u]nder an unrestricted submission, the arbitrators' decision is considered final and binding; thus the courts will not

review the evidence considered by the arbitrators nor will they review the award for errors of law or fact. . . . Furthermore, in applying this general rule of deference to an arbitrator's award, [e]very reasonable presumption and intendment will be made in favor of the [arbitral] award and of the arbitrators' acts and proceedings." (Citations omitted; footnote altered; internal quotation marks omitted.) *Board of Education* v. *Local R1-126, National Assn. of Government Employees*, 108 Conn. App. 35, 39–41, 947 A.2d 371 (2008).

I

The plaintiffs claim that the trial court improperly denied their application to vacate the arbitration award because the award was not timely issued. Specifically, the plaintiffs argue that the award was not made within thirty days from the close of the hearing and, thus, pursuant to General Statutes § 52-416 (a), the arbitration award has "no legal effect." We disagree.

The standard of review for statutory interpretation is well settled. "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . .

"Moreover, [t]his court will not reverse the factual findings of the trial court unless they are clearly erroneous. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . In making this determination, every reasonable presumption must be given in favor of the trial court's ruling." (Citation omitted; internal quotation marks omitted.) *Petrucelli* v. *Travelers Property Casualty Ins. Co.*, 146 Conn. App. 631, 635–36, 79 A.3d 895 (2013), cert. denied, 311 Conn. 909, 83 A.3d 1164 (2014).

"Section 52-416 addresses the time within which an award must be rendered. Subsection (a) of § 52-416 provides: 'If the time within which an award is rendered has not been fixed in the arbitration agreement, the arbitrator or arbitrators or umpire shall render the award within thirty days from the date the hearing or hearings are completed, or, if the parties are to submit additional material after the hearing or hearings, thirty days from the date fixed by the arbitrator or arbitrators or umpire for the receipt of the material. An award made after that time shall have no legal effect unless the parties expressly extend the time in which the award may be made by an extension or ratification in writing.' " *Bumbolow* v. *Foreman*, 151 Conn. App. 307, 316–

17, 95 A.3d 1153, cert. denied, 314 Conn. 916, 100 A.3d 405 (2014).

When reviewing the closing date of the hearing, "it is apparent to us that we should test the arbitrator's decision [of the hearing's closing date] by whether it was reasonable, under the circumstances . . . to extend the completion date of the hearing . . . ." *Carr* v. *Trotta*, 7 Conn. App. 272, 276, 508 A.2d 799, cert. denied, 200 Conn. 806, 512 A.2d 229 (1986).

In *Carr*, this court concluded that it was reasonable for the completion date of the hearing to be extended until the arbitrator received the transcript, as "a transcript aids the trier in the same manner as a brief does, and that it is wholly consistent with good trial practice, when the trier feels the need, to request a transcript of the proceeding before rendering the decision." Id. Additionally, this court noted that "[t]here is no requirement that [the arbitrator] seek the consent of the parties before [extending the completion date]." Id., 275. This court also concluded in *Shore* v. *Haverson Architecture & Design, P.C.*, 92 Conn. App. 469, 475, 886 A.2d 837 (2005), cert. denied, 277 Conn. 907, 894 A.2d 988 (2006), that it was reasonable for an arbitrator to choose a closing date that allowed the parties additional time to submit further documentary evidence. And, in *Bumbolow* v. *Foreman*, supra, 151 Conn. App. 318–19, this court found that it was reasonable for an arbitrator to keep a hearing open in order to receive audit results.

The following additional facts, as found by the trial court, are relevant to our resolution of the plaintiffs' claim. "Rulings on dispositive motions were issued by Stein on October 23, 2012. Joseph M. Pastore III, counsel for the [plaintiffs], wrote to Stein to advise him that the [plaintiffs] were going to file a counterclaim against the [defendants] and a third-party claim against MUI for indemnification. Stein replied by e-mail on November 7, 2012. While he deferred to Veneda Edenfield, AAA senior case manager, as to the application of the AAA rules, Stein expressed his belief that the [plaintiffs] would need to file an arbitration demand and commence an action which would, thereafter, be joined with the arbitration before him. . . .

"On February 28, [2013], Pastore wrote again to Stein, indicating that the [plaintiffs] intended to initiate a separate arbitration against the [defendants] to assert a variety of claims which arose out of the same facts and circumstances at issue in the arbitration before Stein. Pastore asked for a formal affirmation from Stein that the [plaintiffs] would not be precluded from asserting such a counterclaim in a subsequent AAA proceeding or in a court of law. In the alternative, *Pastore asked that Stein keep the matter open after the hearings scheduled for the following week* and to refrain from issuing any award in order to allow the [plaintiffs] to assert their intended counterclaims, including a claim

for attorney's fees, against the [defendants] in a separate AAA arbitration, which could then be consolidated with the pending action to allow further hearings on the [plaintiffs'] claims against the [defendants] and/or MUI.

"Stein replied on March 1, 2013, by e-mail: 'I did not preclude anyone from doing anything. What I said in November, [2012], is that in arbitration you don't file a counterclaim or cross claim, you file a demand for arbitration. I am not going to opine on the consequences that stem from your failure to do so. I assume that if you file a demand for arbitration in 2013 for a breach in 2004 your adversary will assert a [statute of limitations] defense. Just guessing. As to claims for attorney's fees, let's wait and see.' On March 4, 2013, the [plaintiffs][3] filed such separate claims with [AAA against] the [defendants] and MUI . . . .

"The hearing on the [defendants'] claims in this arbitration took place on March 5, 2013, and March 6, 2013. On March 7, 2013, Stein wrote via e-mail that he thought the facts were clear and the law already fully briefed and resolved. 'Unless you all strenuously object, I am ready to issue an award and can do so in a matter of weeks. If anyone still wants to send me something, let me know, but otherwise [let's] close this and get it resolved quickly.' By a later e-mail that day, Stein provided the parties with an opportunity to file posthearing briefs through March 14, 2013. Although the record is not clear, apparently later that day, Mark Kallenbach, counsel for the [defendants], advised Stein that he had received the [plaintiffs'] arbitration claims and asked if Stein would hear a motion to dismiss the claims. Stein replied, on that same date, that he had not been assigned the case and would have no authority to rule on such a motion. Pastore e-mailed Kallenbach and Stein, commenting that Stein did not procedurally have the authority to rule on the new matter.

"In response, Stein replied to all that he was aware of the intent of the [plaintiffs] to consolidate their claims, asked Edenfield as to the procedure for consolidation and indicated that he would delay his decision. 'I will hold my hearing determination in abeyance awaiting guidance from AAA.' Stein, thereafter, e-mailed the parties on March 15, 2013, to advise them that AAA informed him that the [plaintiffs'] claim was not 'a labor/ benefits case but rather a commercial case' and that the parties would receive a list of arbitrators from which they would choose. Stein indicated that he believed he would be on that list and that any motions made in that file would be made to the chosen arbitrator. . . .

"On April 17, 2013, Stein again e-mailed Kallenbach and Pastore, indicating that he was informed by AAA that another arbitrator had been selected in the new case and he would, therefore, be issuing an opinion in the case before him. On May 13, 2013, Pastore e-mailed a letter to the AAA case manager, noting that the arbitra-

tion award had not been issued within thirty days, as required by AAA Rule 30 and Connecticut law, that [the plaintiffs] did not consent to the length of time it [was] taking for the award to be rendered, and that Pastore had not waived any future objection that the award [was] untimely. In response to Pastore's letter, Stein replied that he had 'told the parties that [he] was waiting on assignment regarding the new arbitration and that [he] would not begin to write the award until [he] heard from the parties about possible assignment and consolidation. No one objected to that.' The award was dated May 15, 2013, and e-mailed to Edenfield and counsel for the parties on May 17, 2013. The award makes a specific finding that '[a]t that time, on or about April 18, 2013, just before my scheduled trip to Europe, the record was closed.' This comment likely refers to Stein's e-mail of April 17, 2013, where he indicated that he would be issuing an opinion." (Emphasis added; footnotes added and omitted.)

The trial court applied the reasonableness standard when reviewing the closing of the hearing and found that "Stein reasonably awaited the closing of the hearings in expectation of the submission of [the] additional element [of the separate AAA arbitration]" and, therefore, concluded that the award was timely. The plaintiffs argue that the trial court improperly interpreted § 52-416 (a) and mistakenly concluded that the award was timely because the statute is clear and unambiguous that the award must be made within thirty days of the date that the hearing was completed or the date fixed for the receipt of material, and that "[t]he arbitration ended March 6, [2013], and the [plaintiffs] submitted their posthearing brief by March 14, 2013, yet the arbitrator did not render his decision until May 17, 2013." Therefore, the plaintiffs argue, the trial court improperly confirmed the award, as it was untimely as a matter of law. We disagree.

Our case law is clear that the closing date of the hearing is reviewed under a standard of reasonableness. *Carr* v. *Trotta*, supra, 7 Conn. App. 276. In the present matter, April 18, 2013, was a reasonable date for Stein to close the hearing, as it only then became clear that the two arbitrations could not be consolidated. Closing the hearing after the determination that the cases could not be consolidated is not only consistent with the public policy that favors arbitration for efficiency and economic reasons; see *Remax Right Choice* v. *Aryeh*, 100 Conn. App. 373, 381, 918 A.2d 976 (2007); but also was a reasonable interpretation of the plaintiffs' previously stated intentions. The plaintiffs had informed Stein of their intention to file counterclaims and also notified him of their intention to initiate a separate arbitration. The plaintiffs asked him to "keep this matter open after next week's hearings, and refrain from issuing any award in connection with next week's hearings, in order to allow the [plaintiffs] to assert their intended

claims . . . by initiation of a separate AAA arbitration, which could then be consolidated with this action . . . ." Further, although an arbitrator does not need the consent of the parties to extend the completion date of a hearing; see *Carr* v. *Trotta*, supra, 275; the plaintiffs did not object until May 13, 2013, which reasonably led Stein to conclude that he was prolonging the hearings with the consent of the parties. Therefore, we conclude that the trial court did not err in determining that the closing date of April 18, 2013, was reasonable and that the award was timely.

## II

The plaintiffs' second claim is that the trial court improperly denied their application to vacate the arbitration award because the award was predicated on a manifest disregard of the law. Specifically, the plaintiffs argue that Stein ignored well settled contract law and improperly concluded that a contract existed despite the lack of elements necessary for a contract, and that the trial court erred in upholding the award predicated on that conclusion. We disagree.

Pursuant to § 52-418 (a) (4), an arbitration award shall be vacated "if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made." "[A]n award that manifests an egregious or patently irrational application of the law is an award that should be set aside pursuant to § 52-418 (a) (4) because the arbitrator has exceeded [his] powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made." (Internal quotation marks omitted.) *Economos* v. *Liljedahl Bros., Inc.*, 279 Conn. 300, 306, 901 A.2d 1198 (2006). Our Supreme Court has emphasized that "the manifest disregard of the law ground for vacating an arbitration award is narrow and should be reserved for circumstances of an arbitrator's extraordinary lack of fidelity to established legal principles.

"So delimited, the principle of vacating an award because of a manifest disregard of the law is an important safeguard of the integrity of alternat[ive] dispute resolution mechanisms. Judicial approval of arbitration decisions that so egregiously depart from established law that they border on the irrational would undermine society's confidence in the legitimacy of the arbitration process. . . . Furthermore, although the discretion conferred on the arbitrator by the contracting parties is exceedingly broad, modern contract principles of good faith and fair dealing recognize that even contractual discretion must be exercised for purposes reasonably within the contemplation of the contracting parties. . . .

"In *Garrity* [v. *McCaskey*, 223 Conn. 1, 9, 612 A.2d 742 (1992)], [our Supreme Court] adopted the test enun-

ciated by the United States Court of Appeals for the Second Circuit in interpreting the federal equivalent of § 52-418 (a) (4). . . . The test consists of the following three elements, all of which must be satisfied in order for a court to vacate an arbitration award on the ground that the arbitration panel manifestly disregarded the law: (1) the error was obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator; (2) the arbitration panel appreciated the existence of a clearly governing legal principle but decided to ignore it; and (3) the governing law alleged to have been ignored by the arbitration panel is well defined, explicit, and clearly applicable." (Internal quotation marks omitted.) *Economos* v. *Liljedahl Bros.*, supra, 279 Conn. 306–307.

When reviewing the plaintiffs' argument that the award was a manifest disregard of the law, the trial court concluded that "the award is clear that Stein considered all of the contracts and communications between the parties. The award incorporated Stein's review of the plan, which claimed to provide 'virtually unlimited [tax] deductions for the employer' and asserted that deductions to the plan were tax deductible as ordinary and necessary expenses of the business pursuant to 26 U.S.C. § 162 (a). Although Stein did not expressly state the basis for his determination that the [plaintiffs] failed to provide a tax free transfer of the policy out of the plan to the [defendants], the parties have submitted a letter from the plan to participating employers, which described the ability of the plan to distribute a policy to a covered employee upon the participating employer's termination of participation in the plan. The award is clear that Stein considered the [plaintiffs'] argument that the [defendants] had no evidence of a contract that was breached. He simply disagreed. As such, these are findings of fact which the court is not at liberty to reverse." We agree.

The plaintiffs claim, in essence, that this court may review the arbitrator's ultimate determination because it is not in alignment with contract law and the evidence presented to the arbitrator. It is well settled that such a claim "has no basis in arbitration law. . . . [Such an] argument appears to be a thinly veiled attempt to have the award vacated on the ground that it was not supported by any evidence presented at the hearings. . . . [Our Supreme Court] considered a similar argument in *Milford Employees Assn.* v. *Milford*, 179 Conn. 678, 684, 427 A.2d 859 (1980), wherein the plaintiffs assert[ed] that, as a matter of law, the evidence required a conclusion in their favor. In rejecting the plaintiffs' argument, [our Supreme Court] noted that the plaintiffs were essentially requesting a full trial on their claim, which § 52-418 does not permit. . . . [Our Supreme Court] explained: The parties freely bargained for the remedy of arbitration in the event of a dispute of this nature. Having done so, they are bound by the decision

lawfully rendered." (Citations omitted; internal quotation marks omitted.) *AFSCME, Council 4, Local 2663* v. *Dept. of Children & Families*, 317 Conn. 238, 257–58, 117 A.3d 470 (2015). "[C]ourts do not review the evidence or otherwise second-guess an arbitration panel's factual determinations when the arbitration submission is unrestricted." *Industrial Risk Insurers* v. *Hartford Steam Boiler Inspection & Ins. Co.*, 273 Conn. 86, 96, 868 A.2d 47 (2005). The plaintiffs' claim that Stein's award was in manifest disregard of the law relies on the argument that Stein ignored contract law in his improper factual determination that elements of a contract existed. Therefore, we agree with the trial court's rejection of the plaintiffs' argument that the award was made in manifest disregard of law.

### III

The plaintiffs' third claim is that the trial court improperly denied the application to vacate the arbitration award because the award was not mutual, final and definite. Specifically, the plaintiffs argue that because the defendants' litigation with the IRS was ongoing at the time of the award, there was not a definite amount of taxes, penalties, or legal fees, as needed for the award to be mutual, final and definite. We disagree.

"In assessing whether an arbitrator has exceeded his or her powers, the basic test has become the comparison of the award with the submission to determine whether the award conforms to the submission.[4] . . . Conformity with § 52-418 also requires that the award meet the minimum requirements of being mutual, final and definite. [A]n award must be final as to the matters submitted so that the rights and obligations of the parties may be definitely fixed." (Footnote added; internal quotation marks omitted.) *Board of Education* v. *Local R1-126, National Assn. of Government Employees*, supra, 108 Conn. App. 42.

"In support of its claim that the award is indefinite, the board cites *State* v. *AFSCME, Council 4, Local 1565*, 49 Conn. App. 33, 713 A.2d 869 (1998), aff'd, 249 Conn. 474, 732 A.2d 762 (1999), and *Rocky Hill Teachers' Assn.* v. *Board of Education*, [72 Conn. App. 274, 804 A.2d 999, cert. denied, 262 Conn. 907, 810 A.2d 272 (2002)] . . . . [These cases] hold that when future negotiations are required by an arbitration award, that award is indefinite and fails to conform to the requirements of § 52-418. In *AFSCME, Council 4, Local 1565*, the aggrieved party was a correction officer who wrongly had been dismissed from her job. The arbitration award ordered the grievant to be reinstated at *either* the Niantic correctional facility or at an alternate facility that would be agreeable to all parties. This court concluded that the language of the award was indefinite because it did not specify an exact location for placement and, thus, left the location for the placement open to negotiation, and, therefore, it cannot be said to fix definitively the rights

and obligations of the parties. . . .

"In *Rocky Hill Teachers' Assn.*, the issue was the calculation of employee contributions for health and dental care premiums. In the award, the arbitrator ordered the parties to negotiate the issue of whether to include the dental costs within the formula to determine teacher contributions toward medical/health premiums. In the event that said negotiations do not result in an agreement between the parties within thirty (30) days, I order the parties to submit this issue to binding arbitration . . . . This court concluded in that case, as in *AFSCME, Council 4, Local 1565*, that because the award similarly required further negotiation, it thereby failed to fix the rights and obligations of the parties and was not final under § 52-418." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Board of Education* v. *Local R1-126, National Assn. of Government Employees*, supra, 108 Conn. App. 42–43.

Those two cases are distinguishable from the present circumstances because in *AFSCME, Council 4, Local 1565*, and *Rocky Hill Teachers' Assn.*, the awards left the determination of an issue submitted to the arbitrator open to further negotiation when a more definite remedy was available at the time. Here, upon review of the subject matter submitted, we conclude that the present situation differs, as the parties agreed to arbitrate at a time when no more definite remedy was available.[5]

"Section 52-418 (a) (4) provides that an award shall be vacated if 'the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award *upon the subject matter submitted* was not made.' In our construction of § 52-418 (a) (4), [our Supreme Court has], as a general matter, looked to a comparison of the award with the submission to determine whether the arbitrators have exceeded their powers." (Emphasis added.) *Garrity* v. *McCaskey*, supra, 223 Conn. 7.

The trial court found that "[t]he first element of damages definitely fixes the rights and obligations of the parties with respect to taxes and penalties owed by the [defendants] for the transfer of the policies from the Grist Mill Trust Welfare Benefit Plan and its termination. The award clearly does not identify a specific amount of damages but, as the [defendants] assert, [w]hatever resulting amount is what it is, [and] the [plaintiffs] are obliged to pay it as damages. The second element of damages, the $33,546.90 transfer, admits of no ambiguity. The obligation to pay the [defendants'] legal defense costs for the IRS assessment is unambiguously fixed as the legal responsibility of the [plaintiffs]. Similarly, any assessment of state taxes for the transfer of the policies, whatever the amount, must be paid by the [plaintiffs] as damages. The absence of a specific dollar figure does not render the rights and obligations in doubt as to who is entitled to receive or pay the

damages. The award provides sufficient guidance from which the parties may identify the specific amounts of payments. The amounts are those sums assessed by the IRS and the appropriate state agency, as well as the legal defense costs of the IRS assessment charged by Attorney [Thomas] Brever. The [plaintiffs], therefore, have adequate information from Stein's decision to effectuate the award. The submission of the arbitration to Stein authorized him to use his own judgment and discretion and to render an appropriate award. . . . Stein exercised his judgment in effecting an award this court finds to be final and definite." (Citation omitted; internal quotation marks omitted.)

We agree that the award definitively set the liability and legal responsibility of the plaintiffs, even though it did not determine a precise amount of damages. The arbitrator could not possibly have determined the precise amounts, as they had yet to be calculated by the IRS.[6] We note that although the plaintiffs argue that the unsettled amount of legal fees lacks definitiveness, much of the plaintiffs' argument focuses on Stein's factual finding that the plaintiffs promised to pay legal fees. As we have previously mentioned, "courts do not review the evidence or otherwise second-guess an arbitration panel's factual determinations when the arbitration submission is unrestricted." *Industrial Risk Insurers* v. *Hartford Steam Boiler Inspection & Ins. Co.*, supra, 273 Conn. 96.

We also emphasize that in the present matter, the subject matter submitted involved a contract dispute and determination of damages while the settlement litigation with the IRS was still ongoing. The parties were well aware of the active nature of the involvement of the IRS when they agreed to have the matter resolved through arbitration. To vacate an award when it was as final and definite as existing circumstances permitted, would undermine the strong public policy favoring arbitration as a means of resolving disputes. "[T]he parties voluntarily bargained for the decision of the arbitrator and, as such, the parties are presumed to have assumed the risks of and waived objections to that decision. . . . It is clear that a party cannot object to an award which accomplishes precisely what the arbitrators were authorized to do merely because that party dislikes the results. . . . Thus, [our Supreme Court has] previously held that the parties should be bound by a decision that they contracted and bargained for, even if it is regarded as unwise or wrong on the merits." (Citations omitted.) *American Universal Ins. Co.* v. *DelGreco*, 205 Conn. 178, 186–87, 530 A.2d 171 (1987).

The plaintiffs additionally argue that the award was indefinite because Stein retained jurisdiction to interpret and resolve any disputes concerning the award. We are unpersuaded. "[W]hen there is no Connecticut case law directly on point, [the court] may turn for

guidance to the applicable federal law." *Nussbaum* v. *Kimberly Timbers, Ltd.*, 271 Conn. 65, 73 n.6, 856 A.2d 364 (2004). The United States Court of Appeals for the Ninth Circuit has differentiated between a retention of jurisdiction in which a remedy is not provided to the parties that is not final and definite, and one that retained jurisdiction in a case in which a court held the award to be improper or if the parties were unable to agree on nonmandatory terms. *Sheet Metal Workers' International Assn., Local 206, AFL-CIO* v. *R.K. Burner Sheet Metal, Inc.*, 859 F.2d 758, 760–61 (9th Cir. 1988). It concluded that the latter was "final and binding as to all mandatory bargaining terms. Indeed, the award was final for all purposes if no court acted."[7] Id., 761. In the present matter, Stein retained jurisdiction for the sole purpose of interpreting the award or resolving any potential disputes arising from the final effectuation of his ruling. Such a retention of jurisdiction does not involve fashioning a remedy and, thus, does not undermine the finality of the award.[8] We, therefore, agree with the trial court that the award was sufficiently definite and final.

## IV

The plaintiffs' final claim is that the trial court improperly denied their application to vacate the arbitration award because the award violated public policy. Specifically, the plaintiffs argue that the award violates public policy by allowing for damages due to increased tax liability, as it would "place [the defendants] into a better position than if they had never invested in the 419 Plan," and by infringing on the freedom to contract through Stein's determination of contractual obligations. We disagree.

We begin by setting forth our standard of review. "[W]e favor arbitration as a means of settling private disputes, [thus] we undertake judicial review of arbitration awards in a manner designed to minimize interference with an efficient and economical system of alternative dispute resolution. . . . We will, however, submit to higher scrutiny an arbitration award that is claimed to be in contravention of public policy. . . . [P]arties cannot expect an arbitration award approving conduct which is . . . contrary to public policy to receive judicial endorsement any more than parties can expect a court to enforce such a contract between them. . . . When a challenge to the arbitrator's authority is made on public policy grounds, however, *the court is not concerned with the correctness of the arbitrator's decision but with the lawfulness of enforcing the award*. . . .

"Thus, when a party challenges a consensual arbitral award on the ground that it violates public policy, and where that challenge has a legitimate, colorable basis, de novo review of the award is appropriate in order to determine whether the award does in fact violate public

policy. . . . As this court maintained in [*State* v. *AFSCME, Council 4, Local 391*, 309 Conn. 519, 528, 69 A.3d 927 (2013)], we defer to the arbitrator's interpretation of the agreements regarding the scope of the [contract] provision . . . . We conclude only that as a reviewing court, we must determine, pursuant to our plenary authority and giving appropriate deference to the arbitrator's factual conclusions, whether the contract provision in question violates those policies. . . .

"To determine whether an arbitration award must be vacated for violating public policy, we employ a two-pronged analysis. . . . First, we must determine whether the award implicates any explicit, well-defined, and dominant public policy. . . . To identify the existence of a public policy, we look to statutes, regulations, administrative decisions, and case law. . . . Second, if the decision of the arbitrator does implicate a clearly defined public policy, we then determine whether the contract, as construed by the arbitration award, violates that policy." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Burr Road Operating Co. II, LLC* v. *New England Health Care Employees Union, District 1199*, 316 Conn. 618, 629–31, 114 A.3d 144 (2015). "Our case law . . . has emphasized, however, that a reviewing court still is bound by the arbitrator's factual findings in making such a determination." *AFSCME, Council 4, Local 1565* v. *Dept. of Correction*, 298 Conn. 824, 837, 6 A.3d 1142 (2010).

The trial court found that "Stein essentially concluded that the transfer of the life insurance policies to the [defendants] created a tax liability that would not have otherwise been imposed but for the transfer. When a challenge to the arbitrator's authority is made on public policy grounds, however, the court is not concerned with the correctness of the arbitrator's decision but with the lawfulness of enforcing the award. . . . A court reviewing a violation of public policy challenge to an arbitration award is bound by the arbitrator's factual findings in making such a determination. Stein's conclusion, therefore, as to the creation of a tax liability that would not otherwise have been imposed but for the transfer is a factual finding this court may not reverse." (Citations omitted; internal quotation marks omitted.) We agree with the trial court.

The plaintiffs misconstrue Stein's factual findings as a violation of an explicit, well-defined, and dominant public policy. We see no such public policy in this case. As previously stated in parts II and III of this opinion, "courts do not review the evidence or otherwise second-guess an arbitration panel's factual determinations when the arbitration submission is unrestricted." *Industrial Risk Insurers* v. *Hartford Steam Boiler Inspection & Ins. Co.*, supra, 273 Conn. 96. We, therefore, conclude that the trial court properly denied the

application to vacate the award on public policy grounds.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The defendants named other individuals and entities who are not parties to the present action or this appeal.

[2] "A submission is restricted if the agreement conferring the arbitrator's authority over the dispute limits the breadth of issues to be resolved, reserves explicit rights or conditions the award on court review. In the absence of any such restraints, it is unrestricted. *Rocky Hill Teachers' Assn.* v. *Board of Education*, 72 Conn. App. 274, 278 n.6, 804 A.2d 999, cert. denied, 262 Conn. 907, 810 A.2d 272 (2002)." *Board of Education* v. *Local R1-126, National Assn. of Government Employees*, 108 Conn. App. 35, 40 n.3, 947 A.2d 371 (2008). The record does not disclose the existence of a formal written submission in this case; therefore, we treat the submission as unrestricted.

[3] Benistar 419 Plan Services, Inc., Nova Benefit Plans, LLC, and Daniel E. Carpenter joined BASI.

[4] We again note; see footnote 2 of this opinion; that, upon review of the record, it does not appear that the parties made a formal submission in this case. In an e-mail from Stein to the parties, Stein stated that he "hoped that [his] decision [on dispositive motions] would supply [the simple statement of the issue needed]." Additionally, in the posthearing decision and award, Stein articulated the questions before him as: "(1) Did [the defendants] suffer any damages? And (2), if so, how can they be calculated and (3) who should be responsible? . . . At the hearing, the issues were whether [the plaintiffs] breached their contractual duties to [the defendants], including their contractual breach of fiduciary duties . . . ."

[5] We additionally do not view the present situation to be similar to that of *AFSCME, Council 4, Local 1565*, where the remedy was left to the sole predilection of one of the parties. In this case, the record is unclear as to the extent of the opportunity, if any, for the defendants to negotiate with the IRS with respect to settlement of their tax liabilities attributable to their participation in this unsuccessful tax avoidance scheme.

[6] Again, there is no evidence in the record that would suggest that the amount of taxes and penalties is left to the predilection of the defendants. At best, the defendants may attempt to negotiate those amounts with the IRS and, if the plaintiffs are of the view that the defendants did not do so in good faith, the plaintiffs could attempt to raise this with the arbitrator, who has retained jurisdiction.

[7] This reasoning has been used in our Superior Courts, which, although not binding on this court, is persuasive. In *State* v. *New England Health Care Employees Union, District 1199, AFL-CIO*, Superior Court, judicial district of Hartford, Docket No. CV-96-0558742 (April 16, 1997) (19 Conn. L. Rptr. 337, 339), the Superior Court upheld an award as final and definite when the arbitrator retained jurisdiction to "oversee the parties' progress in performing the 'ministerial' task of calculating the exact monetary amount . . . ." The court stated: "An arbitrator's use of boilerplate language generally retaining jurisdiction does not make an award nonfinal. *International Assn. of Bridge, Structural & Ornamental Iron Workers, Shopmen's Local Union 501* v. *Burtman Iron Works, Inc.*, 928 F. Supp. 83, 86 (D. Mass. 1996), citing *Dreis & Krump Mfg. Co.* v. *International Assn. of Machinists & Aerospace Workers, District No. 8*, 802 F.2d 247, 250 (7th Cir. 1986). The fact that an award requires prospective implementation does not make the relief awarded any less final or definite. *Dighello* v. *Busconi*, 673 F. Supp. 85, 91 (D. Conn. 1987).

"Courts have drawn an important distinction between awards that retain jurisdiction and direct the parties to follow specific instructions regarding implementation of the remedy and awards that retain jurisdiction but fail to provide any remedy and order the parties to fashion a remedy. In *Sheet Metal Workers' International Assn., Local 206, AFL-CIO* v. *R.K. Burner Sheet Metal, Inc.*, [supra, 859 F.2d 758] [*Local 206*], the court explained the foregoing distinction when it distinguished its holding in *Millmen Local 550, United Brotherhood of Carpenters & Joiners of America, AFL-CIO* v. *Wells Exterior Trim*, 828 F.2d 1373 (9th Cir. 1987) [*Millmen*]. *Millmen* vacated an award in which the arbitrator ruled only on whether the collective bargaining agreement was violated but declined to fashion any remedy, and sent the question of remedy back to the parties while retaining jurisdiction

in case they were unable to reach an agreement. In contrast, the issue in *Local 206* involved an arbitration award in which the arbitrator ordered the parties to sign a [s]tandard [f]orm [u]nion [a]greement, but retained jurisdiction in the event that a court found that the remedy improperly imposed terms on nonmandatory subjects of bargaining and the parties were unable to reach [an] agreement on those terms. The court held that that award was final and binding. The arbitrator's contingent retention of jurisdiction did not render the award indefinite." *State* v. *New England Health Care Employees Union, District 1199, AFL-CIO*, supra, 19 Conn. L. Rptr. 339.

[8] We additionally note that Stein's retention of jurisdiction addresses the concern voiced by the plaintiffs regarding the reasonableness of attorney's fees.

_____