******************************************************

The ''officially released'' date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************************

THE NORWALK MEDICAL GROUP, P.C., ET AL.
*v.* ARTHUR YEE
(AC 42511)

DiPentima, C. J., and Alvord and Pellegrino, Js.

*Syllabus*

The plaintiffs, a medical group, together with former physician shareholders
of the medical group, sought to vacate an arbitration award in favor of
the defendant, who filed an application to confirm the award, which was
issued in connection with the plaintiffs' alleged breach of a shareholder
employment agreement. The arbitrator denied and dismissed the defen-
dant's claims against the physician shareholders but issued an award
on his claim against the medical group. In their application to vacate
the award, the plaintiffs claimed that the award was not mutual, final
and definite because the arbitrator had failed to allocate arbitration
costs, expenses and compensation and set forth a reasoned award with
respect to the issue of attorney's fees, having failed to award attorney's
fees to the physician shareholders. The trial court denied the plaintiffs'
application to vacate the award, granted the defendant's application to
confirm the award and rendered judgments thereon, from which the
plaintiffs appealed to this court. *Held* that the trial court properly granted
the defendant's motion to confirm the arbitration award: the plaintiffs
failed to sustain the heavy burden necessary to vacate an arbitration
award pursuant to statute (§ 52-418) as they failed to present a reasoned
legal argument for why the award should be vacated on the ground
that the arbitrator failed to allocate arbitration costs, expenses and
compensation, the arbitrator's award of attorney's fees was reasoned
and the arbitrator's failure to explain his decision denying attorney's
fees for the physician shareholders did not constitute grounds to vacate
the award.

Argued February 11—officially released July 21, 2020

*Procedural History*

Application to vacate an arbitration award, brought
to the Superior Court in the judicial district of Stamford-
Norwalk, where the defendant filed an application to
confirm the award; thereafter, the cases were consoli-
dated and tried to the court, *Hon. Taggart D. Adams*,
judge trial referee; judgment denying the application to
vacate and judgment granting the application to con-
firm, from which the plaintiff appealed to this court.
*Affirmed.*

*James C. Riley*, with whom, on the brief, was *Thomas
P. O'Connor*, for the appellants (plaintiffs).

*Anita D. Di Gioia*, for the appellee (defendant).

*Opinion*

DiPENTIMA, C. J. Our courts "undertake judicial review of arbitration awards in a manner designed to minimize interference with an efficient and economical system of alternative dispute resolution. . . . Such a limited scope of judicial review is warranted given the fact that the parties voluntarily bargained for the decision of the arbitrator and, as such, the parties are presumed to have assumed the risk of and waived objection to that decision." (Citations omitted; internal quotation marks omitted.) *Industrial Risk Insurers* v. *Hartford Steam Boiler Inspection & Ins. Co.*, 258 Conn. 101, 110, 779 A.2d 737 (2001). Led by these overarching principles, we consider the present appeal challenging the propriety of an arbitration award rendered in favor of the defendant, Arthur Yee. The plaintiffs, The Norwalk Medical Group, P.C. (medical group), and thirteen individual physicians (physicians) who formerly were members of the medical group,[1] appeal from the judgment of the trial court denying their application to vacate an arbitration award and the judgment of the trial court granting the application to confirm the arbitration award filed by the defendant. On appeal, the plaintiffs claim that the court improperly confirmed the award because it was not mutual, final and definite due to the failure of the arbitrator to (1) allocate arbitration costs, expenses and compensation and (2) set forth a reasoned award with respect to the issue of attorney's fees. We disagree and, accordingly, affirm the judgments of the trial court.

The following facts, as found by the arbitrator or otherwise undisputed, and procedural history are necessary for our resolution of this appeal. The defendant, a physician licensed to practice medicine in the state of Connecticut, became an employee of the medical group on August 1, 1988, and, some twenty years later, executed a written shareholder employment agreement (agreement) with the medical group on or about July 7, 2008. Paragraph 30 of the agreement provided: "Any controversy, claim, or breach arising out of or relating to this [a]greement shall be submitted for resolution to the American Arbitration Association [(AAA)] before one arbitrator. Such arbitration shall be held in Norwalk, Connecticut, in accordance with the rules and practice of the [AAA] then pertaining, and the judgment upon the award rendered shall be final and determinative and may be entered by consent in any court having jurisdiction thereof. The arbitrator shall have no authority to order punitive or exemplary damages but may award reasonable attorney's fees to the prevailing party."

On October 19, 2016, the defendant e-mailed the chief executive officer of the medical group regarding his intention to retire from the practice of medicine prior to the merger of the medical group with another medical

practice. The defendant retired from the medical group on or about June 1, 2017.

On August 7, 2017, the defendant filed a demand for arbitration, claiming that the plaintiffs had breached the agreement and sought approximately $220,242 in damages, as well as attorney's fees and arbitration costs. The defendant claimed that, following his retirement, he was entitled to a buy-out from the medical group, pursuant to appendix II of the agreement, in the amount of $215,042. He also sought an additional $5000 for his 250 shares of the medical group.[2] The medical group denied any obligation to pay the defendant. The defendant's demand was directed to all the plaintiffs.

In a response dated August 29, 2017, the plaintiffs denied the defendant's material allegations and asserted that the physicians were not parties to the agreement and that the demand for arbitration had failed to state a claim against these individuals. The plaintiffs further asserted that the medical group had "ceased the active conduct of its business and [was] in the process of winding up its affairs and liquidating its assets. Thus, there is no obligation under the [agreement] on the part of any of the [plaintiffs] to pay 'retirement compensation' to [the defendant]."

Following the selection of the arbitrator and an agreed upon schedule of the proceedings, the defendant filed a specification of claims on or about November 8, 2017. In count one, the defendant alleged that the medical group had breached the terms of the agreement in failing to pay him in accordance with appendix II. In count two, the defendant set forth various allegations against the physicians that, in his view, resulted in their personal liability to the defendant. In their answer and special defenses, dated November 27, 2017, the plaintiffs denied most of the defendant's allegations and repeated the special defenses set forth in the August 29, 2017 response.

After the filing of various written submissions, including a motion to dismiss filed by the plaintiffs, prehearing memoranda, a stipulation of uncontested facts, posthearing briefs and proposed orders, and after a three day hearing, the arbitrator issued his decision and award on May 22, 2018. The arbitrator concluded that the medical group had breached its contractual obligation to pay the buy-out to the defendant, but that the individual physicians had no obligation to fund it. All the claims against the individual physicians were "denied and dismissed" by the arbitrator. The arbitrator awarded the defendant $220,242, 10 percent interest from July 27, 2017, the date of the breach, and reasonable attorney's fees. The arbitrator concluded his decision and award with the following statement: "*This* [a]ward *is in full settlement of all claims submitted to this* [a]*rbitration. All claims not expressly granted herein are hereby denied.*" (Emphasis added.) The

defendant's counsel subsequently submitted a claim for $162,526 in attorney's fees.

In their June 11, 2018 motion to modify the decision and award of the arbitrator, the plaintiffs sought to have the arbitrator (1) assess arbitration fees, expenses and compensation against the defendant regarding his claims against the individual physicians and (2) award attorney's fees to the physicians as "prevailing parties." Four days later, the arbitrator denied the plaintiffs' motion to modify.[3]

On June 19, 2018, the plaintiffs filed an objection to the defendant's demand for attorney's fees. In part, they claimed that the defendant was not entitled to recover attorney's fees for his unsuccessful claims against the physicians and therefore the attorney's fees should only be $53,822.40. The defendant filed a response dated July 2, 2018.

One week later, the arbitrator issued an "amended decision" regarding the issue of attorney's fees. He awarded the defendant attorney's fees in the amount of $149,903, reducing the amount claimed by $12,623 for charges associated with the service of subpoenas and an "improper and unnecessary concurrent state court action . . . ." The arbitrator further determined that the May 22, 2018 decision and award would not be changed in any other aspect. On July 30, 2018, the arbitrator issued an "amended final decision" that "highlighted" the following "key award components": "The total award of contractual breach damages is $220,242. The interest on the damages from July 27, 2017, to June 5, 2018, at 10 [percent] is $18,886.51. The amended award of [attorney's] fees is $149,903. Total award–$389,031.51."

On August 8, 2018, the plaintiffs filed an application to vacate the arbitration award pursuant to General Statutes § 52-418 and Practice Book § 23-1. Two days later, in a separate action, the defendant filed an application to confirm the arbitration award pursuant to General Statutes §§ 52-408 through 52-424. On October 3, 2018, the plaintiffs moved to consolidate the two actions pursuant to Practice Book § 9-5. On October 16, 2018, the court, *Genuario, J.*, granted the motion to consolidate.

The court, *Hon. Taggart D. Adams*, judge trial referee, held a hearing on October 22, 2018, on the parties' concomitant applications. On January 3, 2019, the court issued a memorandum of decision denying the plaintiffs' application to vacate and granting the defendant's application to confirm the arbitration award. Specifically, it rejected the plaintiffs' argument that the arbitrator had failed to make a mutual, final and definite award by failing to allocate the arbitration fees, expenses and compensation as required by rule 39 (d) of the AAA. The court also was not persuaded by the plaintiffs'

contention that in not providing the rationale for the attorney's fees issues, the arbitrator had failed to issue a reasoned award.[4]  This appeal followed. Additional facts will be set forth as necessary.

As a preliminary matter, we set forth the legal principles and standard of review applicable to our discussion of the plaintiffs' appellate claims and arguments. Generally, "courts favor arbitration as a means of settling private disputes, [and, therefore] we undertake judicial review of arbitration awards in a manner designed to minimize interference with an efficient and economical system of alternative dispute resolution." (Internal quotation marks omitted.) *Asselin & Vieceli Partnership, LLC* v. *Washburn*, 194 Conn. App. 519, 526, 221 A.3d 875 (2019), cert. denied, 334 Conn. 913, 221 A.3d 449 (2020); see also *Benistar Employer Services Trust Co.* v. *Benincasa*, 189 Conn. App. 304, 309, 207 A.3d 67 (Connecticut takes strongly affirmative view of consensual arbitration, as it is considered favored method to prevent litigation, promote tranquility and expedite equitable settlement of disputes), cert. denied, 331 Conn. 932, 208 A.3d 280 (2019).

"The scope of our review of the arbitrator's decision is defined by whether the submission to arbitration was restricted or unrestricted. The significance  .  .  .  of a determination that an arbitration submission was unrestricted or restricted is not to determine what the [arbitrator is] obligated to do, but to determine the scope of judicial review of what [he or she has] done. Put another way, the submission tells the [arbitrator] what [he or she is] obligated to decide. The determination by a court of whether the submission was restricted or unrestricted tells the court what its scope of review is regarding the [arbitrator's] decision.  .  .  .  The authority of an arbitrator to adjudicate the controversy is limited only if the agreement contains express language restricting the breadth of issues, reserving explicit rights, or conditioning the award on court review. In the absence of any such qualifications, an agreement is unrestricted." (Citation omitted; internal quotation marks omitted.) *Asselin & Vieceli Partnership, LLC* v. *Washburn*, supra, 194 Conn. App. 526–27; see also *Girolametti* v. *Michael Horton Associates, Inc.*, 332 Conn. 67, 81 n.6, 208 A.3d 1223 (2019); *Industrial Risk Insurers* v. *Hartford Steam Boiler Inspection & Ins. Co.*, 273 Conn. 86, 89 n.3, 868 A.2d 47 (2005).

In the present case, the parties' arbitration agreement did not contain express language restricting the breadth of issues, reserving explicit rights or conditioning the award on court review. The parties' agreement imposed no limit or condition on the authority of the arbitrator. See *Alderman & Alderman* v. *Pollack*, 100 Conn. App. 80, 85, 917 A.2d 60 (2007). Therefore, we conclude, and the parties do not dispute, that the submission to arbitration was unrestricted. See, e.g., *LaFrance* v.

*Lodmell*, 322 Conn. 828, 852, 144 A.3d 373 (2016) (submission is unrestricted unless otherwise agreed to by parties).

The scope of our review of an unrestricted submission, as a general matter, is limited. "Judicial review of arbitral decisions is narrowly confined. . . . When the parties agree to arbitration and establish the authority of the arbitrator through the terms of their submission, the extent of our judicial review of the award is delineated by the scope of the parties' agreement. . . . Where the submission does not otherwise state, the arbitrators are empowered to decide factual and legal questions and an award cannot be vacated on the grounds that . . . the interpretation of the agreement by the arbitrators was erroneous. . . . [T]he arbitrators' decision is considered final and binding; thus the courts will not review the evidence considered by the arbitrators nor will they review the award for errors of law or fact. . . .

"When reviewing an unrestricted submission to arbitration, however, our Supreme Court has recognized a few limited circumstances in which a court can vacate an award: (1) the award rules on the constitutionality of a statute . . . (2) the award violates clear public policy . . . [and] (3) the award contravenes one or more of the statutory proscriptions of § 52-418." (Citations omitted; footnote omitted; internal quotation marks omitted.) *Asselin & Vieceli Partnership, LLC* v. *Washburn*, supra, 194 Conn. App. 527–28. "As a routine matter, courts review de novo the question of whether any of those exceptions apply . . . ." (Internal quotation marks omitted.) *Benistar Employer Services Trust Co.* v. *Benincasa*, supra, 189 Conn. App. 310; *Toland* v. *Toland*, 179 Conn. App. 800, 810, 182 A.3d 651, cert. denied, 328 Conn. 935, 183 A.3d 1174 (2018). Only the third circumstance is at issue in the present case.

Section 52-418 provides that an award shall be vacated if the arbitrator exceeded his or her powers or executed them so imperfectly that a mutual, final and define award was not made. *Westbrook Police Union, Local 1257, Council 15* v. *Westbrook*, 125 Conn. App. 225, 227, 6 A.3d 1164 (2010). "In our construction of § 52-418 (a) (4), we have, as a general matter, looked to a comparison of the award with the submission to determine whether the arbitrators have exceeded their powers. . . . The standard for reviewing a claim that the award does not conform to the submission requires what we have termed in effect, de novo judicial review. . . . Although we have not explained precisely what in effect, de novo judicial review entails as applied to a claim that the award does not conform with the submission, that standard best can be understood when viewed in the context of what the court is permitted to consider when making this determination and the exact nature of the inquiry presented. Our review is limited to a comparison of the award to the submission. Our inquiry

generally is limited to a determination as to whether the parties have vested the arbitrators with the authority to decide the issue presented or to award the relief conferred. . . .

"In determining whether an arbitrator has exceeded the authority granted under the contract, a court cannot base the decision on whether the court would have ordered the same relief, or whether or not the arbitrator correctly interpreted the contract. The court must instead focus on whether the [arbitrator] had authority to reach a certain issue, not whether that issue was correctly decided. *Consequently, as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of authority, the award must be enforced. The arbitrator's decision cannot be overturned even if the court is convinced that the arbitrator committed serious error. . . . Moreover, [e]very reasonable presumption and intendment will be made in favor of the award and of the arbitrator's acts and proceedings. Hence, the burden rests on the party challenging the award to produce evidence sufficient to show that it does not conform to the submission.*" (Emphasis added; internal quotation marks omitted.) Id., 227–28. Guided by these principles, we address the specifics of the plaintiffs' appeal.

I

The plaintiffs first claim that the court improperly confirmed the award because it was not mutual, final and definite due to the failure of the arbitrator to allocate arbitration costs, expenses and compensation as required by rule 39 (d) of the AAA. Specifically, they argue that the failure to include this allocation in the arbitration award requires that it be vacated pursuant to § 52-418 (a) (4). We are not persuaded.

Paragraph 30 of the agreement required the parties to use an AAA arbitration in the event of a dispute arising from the agreement. The AAA Employment Arbitration Rules and Mediation Procedures, effective November 1, 2009, and amended fee schedule effective July 1, 2016, set forth the following in rule 39 (d): "The arbitrator may grant any remedy or relief that would have been available to the parties had the matter been heard in court including awards of attorney's fees and costs, in accordance with applicable law. The arbitrator shall, in the award, assess arbitration fees, expenses, and compensation as provided in Rules 43, 44, and 45 in favor of any party and, in the event any administrative fees or expenses are due to the AAA, in favor of the AAA, subject to the provisions contained in the Costs of Arbitration section."

In the defendant's demand for arbitration, he indicated that the amount of his claim totaled $220,242, and that he also sought attorney's fees and arbitration costs. On this form, the defendant indicated that the

flexible fee schedule for individually negotiated contracts applied,[5] and that he had submitted payment of $1650. In a letter dated September 27, 2017, the AAA informed the parties that the arbitrator charged a rate of $500 per hour. During the proceedings, the defendant again requested that the plaintiffs be ordered to pay the arbitration expenses. Following the decision and award, the plaintiffs, in their June 11, 2018 motion to modify the award, argued that the arbitrator was required to allocate the arbitration expenses.

In their application to vacate the award, the plaintiffs argued, inter alia, that the arbitrator had not rendered a mutual, final and definite award because he had "failed to allocate arbitration fees, expenses and compensation as required by the governing AAA rules." They explained further, as a result of this omission, the arbitration award should be vacated pursuant to § 52-418 (a) (4). In his application to confirm the arbitration award, the defendant countered that the arbitrator's award stated that it constituted a full settlement of all claims submitted, and that any claim not specifically granted had been denied. In its memorandum of decision, the trial court concluded that the plaintiff's arguments regarding the allocation of arbitration fees, expenses and costs were "not very persuasive." The court noted that AAA rules 43,[6] 44[7] and 45[8] addressed these items and appeared "to have been respected by the parties." The court concluded: "Frankly, neither side has offered compelling arguments in favor of either vacating or confirming the award based [on] the contention that AAA rule 39 (d) was or was not violated, and the court will not vacate the award on those nebulous arguments and counterarguments."

On appeal, the plaintiffs reassert their argument that the arbitrator failed to allocate the arbitration fees, expenses and compensation in the award pursuant to rule 39 (d). They further contend that, in the absence of the allocation, the award must be vacated. We are not persuaded.

At the outset, we note that the plaintiffs have not provided this court with any legal support for their argument regarding the allocation issue.[9] See, e.g., *Alpert* v. *Bennett Law Firm, P.C.*, United States District Court, Docket No. H-06-1642 (NKJ) (S.D. Tex. August 21, 2007) (party provided District Court with no legal standard that arbitration award should be vacated even if AAA rules had been violated and, therefore, said claim failed), aff'd, 295 Fed. Appx. 725 (5th Cir. 2008).[10] Furthermore, the plaintiffs' position that such a violation of the AAA rules *mandates* that the arbitration award be vacated does not comport with the law. See, e.g., *Circle Industries USA, Inc.* v. *Parke Construction Group, Inc.*, 183 F.3d 105, 109 (2d Cir.) (violation of AAA rules can, under certain circumstances, require vacatur of arbitration award, but party seeking vacatur

bears heavy burden of establishing sufficient grounds), cert. denied, 528 U.S. 1062, 120 S. Ct. 616, 145 L. Ed. 2d 510 (1999); *New York Newspaper Printing Pressman's Union No. 2* v. *New York Times Co.*, United States District Court, Docket No. 91 Civ. 4677 (CSH) (S.D.N.Y. May 22, 1992) (violations of AAA rules, although relevant to issue of arbitrator misconduct, are not sufficient in and of themselves to vacate arbitration award).

Finally, we are mindful of the principles applicable to this type of claim. Our Supreme Court has stated that "[a]n award conforming to an unrestricted submission should generally be confirmed by the court." *Garrity* v. *McCaskey*, 223 Conn. 1, 12, 612 A.2d 742 (1992). Further, a heavy burden is placed on a party seeking to vacate an award pursuant to § 52-418 (a). See *Doctor's Associates, Inc.* v. *Windham*, 146 Conn. App. 768, 774, 81 A.3d 230 (2013) (parties consent to arbitration, and, therefore, court will make every reasonable presumption in favor of arbitration award and arbitrator's acts and proceedings). With respect to this claim, we agree with the trial court that the plaintiffs failed to present "compelling arguments in favor" of vacating the arbitration award based on an alleged violation of rule 39 (d) of the AAA, and we decline to vacate that award on the basis of their unsupported contentions. The plaintiffs have not produced a well supported, reasoned legal argument containing a cogent analysis to persuade this court that the arbitration award should be vacated on this ground. Accordingly, this claim must fail.

II

The plaintiffs next claim that the court improperly confirmed the award because it was not mutual, final and definite due to the failure of the arbitrator to set forth a reasoned award with respect to attorney's fees. Specifically, the plaintiffs argue that the parties bargained for a reasoned award and the arbitrator failed to meet that standard in granting attorney's fees to the defendant and denying attorney's fees to the physicians. We are not persuaded and agree with the court's rejection of this claim.

The following facts and procedural history are necessary for our discussion. Rule 39 (c) of the AAA rules provides that the arbitration award "shall be in writing . . . and shall provide the written reasons for the award unless the parties agree otherwise." All parties sought attorney's fees. In the May 22, 2018 decision and award, the arbitrator found that no evidence had been presented that the physicians had agreed to personally pay the defendant's buy-out. Thus, he concluded that the physicians had no obligation to fund the buy-out of the defendant and that the claims directed against the physicians were "denied and dismissed." The arbitrator further determined that the medical group had breached the agreement by failing to pay the defendant's buy-out on or about July 27, 2017. The arbitrator awarded the

defendant $220,242 from the medical group, plus interest of 10 percent from July 27, 2017, to June 5, 2018. He also awarded reasonable attorney's fees to the defendant, pursuant to paragraph 30 of the agreement and the AAA rules. The defendant's counsel was instructed to draft a judgment, including the interest calculation and an affidavit of attorney's fees, for review within two weeks of the arbitration award. The arbitrator concluded his decision by stating that his award resolved all of the parties' claims, and that any claim not expressly granted had been denied. In the draft judgment submitted by the defendant's counsel, the interest was calculated in the sum of $18,886.51, and the claimed attorney's fees totaled $162,526.

In the plaintiffs' June 11, 2018 motion to modify the arbitration award, they argued, inter alia, that the arbitrator had failed to address whether the physicians were entitled to attorney's fees as prevailing parties and that there was no legal or logical basis for awarding attorney's fees to the defendant and not awarding attorney's fees to the physicians. The arbitrator denied the plaintiffs' motion to modify on June 15, 2018. In response to the plaintiffs' challenge to the attorney's fees requested by the defendant, the arbitrator issued an "Amended Decision Re: Attorney Fees" on July 9, 2018. In that decision, he awarded the defendant $149,903 in attorney's fees, a reduction of $12,623 from the requested amount of $162,526. He reaffirmed his earlier decision by concluding that "[i]n all other regards, the [d]ecision and [a]ward of [a]rbitrator, dated May 22, 2018 remains the same." Finally, on July 30, 2018, the arbitrator issued an "Amended FINAL Decision" awarding $389,031.51 to the defendant.

In considering the parties' competing motions, the trial court considered the plaintiffs' contention that the arbitrator had failed to issue a reasoned award with respect to attorney's fees, and, therefore, it did not constitute a mutual, final and definite award pursuant to § 52-418 (a). The court concluded that the arbitrator had explained the reasons for awarding attorney's fees to the defendant and that those fees were reasonable. "Furthermore, the arbitrator had before him ample submissions by the counsel for all parties on the issue of the amount and reasonableness of the fee request and reduced the fee request by [the defendant] for several articulated reasons."

With respect to whether the arbitrator had issued a reasoned award as to his decision to not award attorney's fees to the physicians, the court stated: "On their face the arguments in favor of assessing attorney's fees against [the defendant] in connection with his failed claims against the [physicians] have some appeal. However, the court finds the [rejection of the physicians' claim for attorney's fees] well within the scope of the arbitrator's power and not subject to this court's sec-

ond-guessing. In addition, and with some reluctance, the court will not vacate the [a]ward because the arbitrator failed to articulate reasons for denying an award of attorney's fees to [the medical group and the physicians]. As noted the denial was well within the arbitrator's discretion. In addition, the court particularly notes that this claim for fees was brought to the arbitrator's attention on numerous occasions. . . . Under these circumstances the court will not vacate a decision, whether the reasons are articulated or not, when the arbitrator had many opportunities to consider and reconsider granting fees, but eventually determined not do so."

On appeal, the plaintiffs reassert that the arbitrator failed to issue a reasoned award with respect to the attorney's fees awarded to the defendant and the denial of attorney's fees to the physicians. They further contend that, as a result of this deficiency, the court erred in confirming the arbitration award and the entire award must be vacated. We are not persuaded.

As a general matter, the decision of an arbitrator need not include expansive reasoning to obtain judicial confirmation. See *Bic Pen Corp.* v. *Local No. 134, United Rubber, Cork, Linoleum & Plastic Workers of America*, 183 Conn. 579, 585, 440 A.2d 774 (1981) (arbitrator required only to render award in conformity to submission and need not include explanation of means by which award was reached); see also *Henry* v. *Imbruce*, 178 Conn. App. 820, 827–28, 177 A.3d 1168 (2017) (under federal law, only barely colorable justification for outcome necessary to confirm award). The parties, via the terms of an arbitration agreement, can require that the arbitrator issue a reasoned award, which contains greater details than a standard award. See, e.g., *SBD Kitchens, LLC* v. *Jefferson*, 157 Conn. App. 731, 747–48, 118 A.3d 550 (parties may agree to have arbitrator issue one of several types of arbitration awards, including reasoned award), cert. denied, 319 Conn. 903, 122 A.3d 638 (2015); *Lawson* v. *Privateer, Ltd.*, Superior Court, judicial district of Middlesex, Docket No. CV-06-4006118-S (February 1, 2007) (noting difference between standard award and reasoned award); see also *Tully Construction Co.* v. *Canam Steel Corp*, United States District Court, Docket No. 13 Civ. 3037 (PGG) (S.D.N.Y. March 2, 2015) (noting difference between "general, regular, standard or bare" award, which simply announces result, and "reasoned award," which includes something more than simple result).

In *SBD Kitchens, LLC* v. *Jefferson*, supra, 157 Conn. App. 740–41, this court addressed what constitutes a reasoned award in the arbitration context. In that case, the appellants claimed that the arbitrator's award of punitive damages, consisting of attorney's fees and costs, should be vacated because it was made in manifest disregard of the law. In resolving that claim, we

set forth the meaning of a reasoned award under the AAA rules. Id., 747. First, we explained that the AAA rules do not define the term "reasoned award." Id., 747–48. Second, we noted that, although no Connecticut appellate case law specifically had defined that term, many federal courts had. Id., 748. "The common theme of those federal authorities, with which we agree, is that a reasoned award means something more than a simple result and less than specific findings of fact and conclusions of law." Id.; see also *Leeward Construction Co., Ltd.* v. *American University of Antigua-College of Medicine*, 826 F.3d 634, 640 (2d Cir. 2016).

Next, it is necessary to review briefly the relevant legal principles pertaining to awards of attorney's fees and a prevailing party. "The general rule of law known as the American rule is that attorney's fees and ordinary expenses and burdens of litigation are not allowed to the successful party absent a contractual or statutory exception. . . . This rule is generally followed throughout the country. . . . Connecticut adheres to the American rule. . . . There are few exceptions. For example, a specific contractual term may provide for the recovery of attorney's fees and costs . . . or a statute may confer such rights. . . . [W]e review the trial court's decision to award attorney's fees for abuse of discretion." (Citations omitted; internal quotation marks omitted.) *Broadnax* v. *New Haven*, 270 Conn. 133, 178, 851 A.2d 1113 (2004); see also *Francini* v. *Riggione*, 193 Conn. App. 321, 330, 219 A.3d 452 (2019).

We also note that "[o]ur Supreme Court has stated: [P]revailing party has been defined as [a] party in whose favor a judgment is rendered, regardless of the amount of damages awarded." *Giedrimiene* v. *Emmanuel*, 135 Conn. App. 27, 34–35, 40 A.3d 815 (citing *Wallerstein* v. *Stew Leonard's Dairy*, 258 Conn. 299, 303, 780 A.2d 916 (2001)), cert. denied, 305 Conn. 912, 45 A.3d 97 (2012). In this context, however, the question of whether a party has, in fact, "prevailed" is a question reserved for the arbitrator, and the propriety of the arbitrator's conclusion is not subject to review for errors of law or fact by the courts. *Comprehensive Orthopaedics & Musculoskeletal Care, LLC* v. *Axtmayer*, 293 Conn. 748, 758, 980 A.2d 297 (2009).

Applying the foregoing legal principles to the facts of the present case, we conclude that the plaintiffs cannot sustain their heavy burden necessary to vacate an arbitration award. In the May 22, 2018 award, the arbitrator concluded that the medical group had breached its contractual obligation to pay the retirement buy-out for the defendant, that the physicians had no personal liability for this buy-out, and that the defendant's claims against the physicians were not viable. The arbitrator awarded attorney's fees only to the defendant, and, following the plaintiffs' motion to modify, declined to modify the award. The arbitrator, in

response to a challenge of the attorney's fees awarded to the defendant's counsel, issued an amended decision reducing that award by $12,623. Specifically, the arbitrator explained that he had reduced the award for fees associated with the service of subpoenas and an "improper and unnecessary concurrent state court action . . . ."

It is clear, therefore, that the arbitrator considered and issued a reasoned award regarding the attorney's fees awarded to the defendant. He concluded that the medical group had failed to pay the retirement buy-out to the defendant as required by the agreement and, therefore, as the prevailing party, the defendant was entitled to attorney's fees. Furthermore, the arbitrator reviewed the timesheets submitted by the defendant's counsel and disallowed certain aspects of the claimed fees in the amended decision. We conclude, therefore, that the arbitrator met the reasoned award standard with respect to the attorney's fees awarded to the defendant.

Regarding the denial of attorney's fees to the physicians, we share the concern set forth in the trial court's decision that the arbitrator had failed to explain the basis for denying these fees and agree with the trial court's ultimate conclusion that the arbitration award should nevertheless be confirmed. Our conclusion is informed by the clarification of the reasoned award standard from the United States Court of Appeals for the Second Circuit: "We agree with our sister [c]ircuits, and hold . . . that a reasoned award is something more than a line or two of unexplained conclusions, but something less than full findings of fact and conclusions of law on each issue raised before the panel. A reasoned award sets forth the basic reasoning of the arbitral panel on the central issue or issues raised before it. It need not delve into every argument made by the parties. The award here satisfies that standard: while it does not provide a detailed rationale for each and every line of damages awarded, it does set forth the relevant facts, as well as the key factual findings supporting its conclusions. The summary nature of its analytical discussion reflects only that, as the district court found, [t]he parties had ample opportunity to contest [the plaintiff's] entitlement to compensation for change order work, and the summary nature of the discussion in the decision shows that the panel simply accepted [the plaintiff's] arguments on this particular point. . . . No more is needed." (Citation omitted; internal quotation marks omitted.) *Leeward Construction Co., Ltd.* v. *American University of Antigua-College of Medicine*, supra, 826 F.3d 640.

As explained by the trial court, the issue of whether the physicians were entitled to an award of attorney's fees "was brought to the [a]rbitrator's attention on numerous occasions." The arbitrator declined to exer-

cise his discretion and award these fees several times. Further, the arbitrator explained that, although the defendant was entitled to his retirement buy-out, it was the medical group, and not the physicians, who had breached the agreement and was financially responsible. The arbitrator set forth his factual finding and key legal conclusions for the decision on the central issue of the case, that is, whether the defendant was entitled to a buy-out pursuant to the terms of the written shareholder agreement. His failure to include details on the subordinate issue of whether the physicians should be awarded attorney's fees, although perhaps regrettable, does not constitute grounds to warrant judicial interference in the arbitration process.[11] To do so would undercut the strong public policy favoring arbitration. As we noted at the outset, "the parties voluntarily bargained for the decision of the arbitrator and, as such, the parties are presumed to have assumed the risks and waived objections to that decision." *American Universal Ins. Co.* v. *DelGreco*, 205 Conn. 178, 186–87, 530 A.2d 171 (1987); see generally *Industrial Risk Insurers* v. *Hartford Steam Boiler Inspection & Ins. Co.*, supra, 258 Conn. 110; *United States Fidelity & Guaranty Co.* v. *Hutchinson*, 244 Conn. 513, 519–20, 710 A.2d 1343 (1998); *Design Tech, LLC* v. *Moriniere*, 146 Conn. App. 60, 66–67, 76 A.3d 712 (2013). Accordingly, we conclude that the court properly granted the defendant's motion to confirm the arbitration award and properly denied the plaintiffs' motion to vacate.

The judgments are affirmed.

In this opinion the other judges concurred.

[1] The physicians, former shareholders of the medical group, are Roberta Rose, Marvin Den, Richard Gervasi, Richard G. Huntley, Jr., Donald E. Leone, J. James Lewis, Donald E. McNicol, Andrew M. Murphy, Stuart N. Novack, Paulo A. Pino, Pamela J. Randolph, James Samuel, and Paul B. Wiener.

[2] Appendix II of the agreement set forth the "Buy-Out" agreement for nononcology physicians, such as the defendant, and provided as follows: "If a physician completed the purchase of 250 shares of [the medical group] and completed at least 25 years of service with the [medical group], [the physician] will be entitled to 100 [percent] of the Buy-Out Benefit . . . ." The "Buy-Out" was defined as the average of the physician's annual total compensation over the last five full calendar years of employment. Appendix II also provided that the medical group would purchase back the shares of the medical group at the rate of $20 per share.

[3] Specifically, the arbitrator's response to the motion to modify stated: "Having reviewed the June 11, 2018 [m]otion to [m]odify, and noting that there were no challenges as to the computations of [attorney's] fees and costs awarded to the [defendant], and after review of the [defendant's] counsel's letter to the [AAA] dated June 12, 2018, the undersigned denies the [plaintiffs'] [m]otion to [m]odify [a]ward. See [r]ule 40 of the [AAA] Rules."

Rule 40 of the [AAA] rules provides in relevant part: "Within 20 days after the transmittal of an award, any party, upon notice to the other parties, may request the arbitrator to correct any clerical, typographical, technical, or computation errors in the award. The arbitrator is not empowered to redetermine the merits of any claim already decided."

[4] The court also rejected the plaintiffs' claim of manifest disregard of the law. That rejection is not a subject of this appeal.

[5] For this type of arbitration, the AAA fee schedule provides that arbitrator compensation is not part of the administrative fees and that, "[u]nless the parties' agreement provides otherwise, arbitrator compensation and administrative fees are subject to allocation by an arbitrator in an award."

[6] Rule 43 of the AAA Rules, entitled "Administrative Fees," provides in

relevant part: "As a not-of-profit organization, the AAA shall prescribe filing and other administrative fees to compensate it for the cost of providing administrative services. The AAA administrative fee schedule in effect at the time the demand for arbitration or submission agreement is received shall be applicable.

"AAA fees shall be paid in accordance with the Costs of Arbitration section. The AAA may, in the event of extreme hardship on any party, defer or reduce the administrative fees. . . ."

[7] Rule 44 of the AAA rules, entitled "Neutral Arbitrator's Compensation," provides: "Arbitrators shall charge a rate consistent with the arbitrator's stated rate of compensation. If there is disagreement concerning the terms of compensation, an appropriate rate shall be established by the AAA and confirmed by the parties.

"Any arrangement for the compensation of a neutral arbitrator shall be made through the AAA and not directly between the parties and the arbitrator. Payment of the arbitrator's fees and expenses shall be made by the AAA from the fees and moneys collected by the AAA for this purpose.

"Arbitrator compensation shall be borne in accordance with the Costs of Arbitration section."

[8] Rule 45 of the AAA rules, entitled "Expenses," provides: "Unless otherwise agreed by the parties or as provided under applicable law, the expenses of witnesses for either side shall be borne by the party producing such witnesses.

"All expenses of the arbitrator, including required travel and other expenses, and any AAA expenses, as well as the costs relating to proof and witnesses produced at the direction of the arbitrator shall be borne in accordance with the Costs of Arbitration section."

[9] This court has stated: "[W]e are not required to review claims that are inadequately briefed. . . . We consistently have held that [a]nalysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . [F]or this court judiciously and efficiently to consider claims of error raised on appeal . . . the parties must clearly and fully set forth their arguments in their briefs. We do not reverse the judgment of a trial court on the basis of challenges to its rulings that have not been adequately briefed. . . . The parties may not merely cite a legal principle without analyzing the relationship between the facts of the case and the law cited. . . . It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." (Internal quotation marks omitted.) *NRT New England, LLC* v. *Jones*, 162 Conn. App. 840, 856, 134 A.3d 632 (2016); see also *Darin* v. *Cais*, 161 Conn. App. 475, 483, 129 A.3d 716 (2015).

[10] In the absence of precedent from Connecticut courts, this court previously has looked to the federal courts for guidance in examining the AAA rules. See, e.g., *SBD Kitchens, LLC* v. *Jefferson*, 157 Conn. App. 731, 748, 118 A.3d 550, cert. denied, 319 Conn. 903, 122 A.3d 638 (2015); see generally *Nussbaum* v. *Kimberly Timbers, Ltd.*, 271 Conn. 65, 73 n.6, 856 A.2d 364 (2004) (Connecticut appellate courts guided by federal precedent with respect to state statutes comparable to federal law).

[11] The plaintiffs rely on *Smarter Tools, Inc.* v. *Chongqing Senci Import & Export Trade Co., Ltd.*, United States District Court, Docket No. 18-CV-2714 (AJN) (S.D.N.Y. March 26, 2019), appeal dismissed, Docket Nos. 19-943 and 19-1155, 2019 WL 8403145 (2d Cir. November 12, 2019), to support their claim that the arbitrator failed to issue a reasoned award and therefore, it must be vacated. In *Smarter Tools, Inc.*, the plaintiff purchased gas-powered generators from the named defendant. Id. A dispute ensued and arbitration commenced. Id. The parties requested that the arbitrator issue a reasoned award. Id. The named defendant sought payment for the remaining balance on the generators, while the plaintiff contended that the generators were defective and not compliant with certain regulations. Id.

The arbitrator issued a six page final award that detailed the parties and proceedings, ruled on an issue of admissibility, incorporated the parties' stipulation that the plaintiff's outstanding balance totaled approximately $2.4 million, found that the named defendant's claims were "well-founded and supported by the evidence" and determined that the plaintiff's counterclaims were not supported. The arbitrator did not make any findings as to whether the generators were defective, compliant with the applicable regulations or had been unilaterally canceled by the named defendant. The District Court concluded that the arbitrator failed to meet the reasoned award standard because it failed to contain any rationale for rejecting the

plaintiff's claims. Id.

We are not persuaded by the plaintiffs' reliance on this nonbinding authority. In that case, the arbitrator failed to provide any explanation or reasoning for his decision on the central issue, that is, whether the generators at issue had been defective or compliant with the governmental regulations. In contrast, the arbitrator in the present case met the reasoned award standard with respect to the principal issue of whether the defendant should receive his buy-out. Further, the subsidiary matter of whether the physicians should receive attorney's fees was presented to the arbitrator, who, in the exercise of his discretion, declined to award them.

───────────────────────────